423 A.2d 1280

**Daniel L. McCARTHY, Jr. and Anna K. S. W. McCarthy**

**v.**

**Louis BANK, Bernard Granor and Esther Granor, Appellants.**

Superior Court of Pennsylvania.

Argued Sept. 9, 1980.

Filed Dec. 29, 1980.

Petition for Allowance of Appeal Denied April 10, 1981.

330

Edward D. Foy, Jr., Richboro, for appellants.

Justin K. McCarthy, Bethlehem, for appellees.

Before SPAETH, HESTER and CAVANAUGH, JJ.

SPAETH, Judge:

This appeal is from a judgment awarding damages for the conversion of a silo and unloader.

In January 1966 appellees purchased a farm from Frederick and Helen Stoneback. The Stonebacks took back a purchase money mortgage. In October 1966 appellees entered into a sales agreement with Penn Jersey Harvestore Systems, Inc., for a silo 20 feet in diameter and 60 feet high and a 20 foot unloader to be used with the silo. Appellees paid $100 down, and in April 1967, when the silo and unloader were installed on their farm, they made a further down payment of $1,315. The sales agreement provided that until the purchase price was paid in full, Penn Jersey would retain title to the silo and unloader, which would be regarded as movable personal property notwithstanding their affixation to the realty. In June 1967 appellees and Penn Jersey executed an installment sales contract for the

unpaid balance of $13,000. Penn Jersey assigned this contract with recourse to the First Pennsylvania Banking & Trust Company, and in July financing statements reciting that First Pennsylvania was the secured party and appellees the debtors were filed with the Prothonotary of Bucks County and in Harrisburg.

Appellees defaulted on their installment payments and First Pennsylvania required Penn Jersey to pay the balance due. Although First Pennsylvania then reassigned its interest in the silo and unloader to Penn Jersey, it erroneously terminated the financing statement that it had filed in Bucks County. On April 8, 1970, Penn Jersey began an action in replevin to regain possession of the silo and unloader.

Meanwhile, appellees had defaulted on the purchase money mortgage held by the Stonebacks, and the Stonebacks had foreclosed on the farm, where the silo and the unloader were located. On the morning of April 10, 1970, the farm was sold to appellants by the sheriff of Bucks County. Before this occurred, an attorney for Penn Jersey made an oral public announcement at the sheriff's sale that the silo and unloader were claimed by Penn Jersey, and that an action in replevin had been begun two days before. Bernard Granor, one of appellants and an experienced attorney, was present at the sale and heard Penn Jersey's announcement.

Eventually appellees settled with Penn Jersey on the balance due on the purchase price of the silo and unloader, paying Penn Jersey $14,000, and on January 21, 1972, they received an assignment of all of Penn Jersey's rights, title and interest in the silo and unloader; the assignment explicitly provided that appellees could pursue the replevin action that had been initiated by Penn Jersey. By stipulation, appellants and appellees then changed the replevin action to an action in trespass for conversion of the silo and unloader and amended the caption to show appellees as plaintiffs and appellants as defendants. The lower court, sitting without a

jury, found for appellees in the amount of $8,500. The court en banc dismissed appellants' exceptions.[1]

■ Appellants argue that at the time of the sheriff's sale, Penn Jersey did not have a valid security interest in the silo and unloader; that even if it did, the oral announcement at the sheriff's sale was not effective notice of the interest; and that in any event, the interest was automatically extinguished when appellees paid the underlying debt and therefore could not be assigned to them.[2]

Our discussion of the first two of these arguments will be rather summary. The lower court has adequately disposed of them.

■ The lower court correctly found that the silo and unloader did not become part of the realty because the intention of the seller, Penn Jersey, and the buyers, appellees, as expressed in the sales agreement was that they should remain movable personal property and because that intention was consistent with the fact that the silo was only bolted onto its concrete foundation and could be removed without significant damage either to itself or to the land. *Clayton v. Lienhard*, 312 Pa. 433, 167 A. 321 (1933). If the silo and unloader were movable personalty, the sale of the farm to appellants gave appellants no interest in them at all. Appellants could only have acquired an interest if the silo and unloader were fixtures.[3]

1. Our summary of the history of the case has been limited to what is necessary to support our decision. Other matters on which the lower court also made findings of fact have been omitted.

2. Appellants also argue that before it could replevy the silo and unloader, Penn Jersey had to proceed against other assets of appellees. We agree with the lower court that this argument is without merit. Marshalling of assets is an equitable principle that comes into play when there are conflicting interests in the same thing. Not only was Penn Jersey's replevin action an action at law, but, as will be discussed, appellants had no interest in the silo and unloader.

3. Because the lower court found that even if the silo and unloader were fixtures appellants acquired no interest in them by virtue of their purchase of the real estate, it did not decide whether they were in fact fixtures or remained movable personalty. We shall proceed in the same way.

■ A fixture is subject to competing interests in the thing itself and the land to which it is affixed. Section 9–313 of the U.C.C. determines the priorities of these competing interests.[4] Section 9–313(2), 13 Pa.C.S.A. § 9313(b), provides that a "security interest which attaches to goods before they become fixtures takes priority as to the goods over the claims of all persons who have an interest in the real estate except as stated in subsection (4)." Section 9–204(1), 13 Pa.C.S.A. § 9204(a), provides that a security interest attaches when "there is an agreement . . . that it attach and value is given and the debtor has rights in the collateral." We agree with the lower court that the effect of the sales agreement and appellees' downpayment was to cause a security interest to attach before the silo and unloader were affixed to the real estate.

Appellants argue that because no security interest was perfected until First Pennsylvania filed financing statements in July, which was more than two months after the silo and unloader were affixed to the real estate, "the Stoneback lien on the real estate absorbed the silo and unloader." Appellants' brief at 14; *see also id.* at 7. This argument ignores the plain language of sections 9–204(1) and 9–313(2), and also confuses the concepts of the *attachment* of a security interest, which concerns the creation of the interest, and the *perfection* of a security interest, which gives notice of the interest and plays a role, but not an exclusive role, in determining priorities among competing

4. In 1979 the General Assembly readopted the Uniform Commercial Code as part of the new Pennsylvania Consolidated Statutes. Act of Nov. 1, 1979, P.L. 255, Act No. 86, 13 Pa.C.S.A. §§ 1101 *et seq.*, effective Jan. 1, 1980. The Code was previously codified in 12A P.S. §§ 1–101 *et seq.* In 13 Pa.C.S.A. the section numbers are not hyphenated and the subsections are lettered rather than numbered. Thus, what was section 9–313(4) is now section 9313(d). Because this case was tried before Jan. 1, 1980, and because the lower court opinion uses the old section designations, we shall also use them, along with the new ones. It should also be noted that in readopting the Code the General Assembly did not adopt the 1972 revision of Article 9 of the U.C.C., dealing with secured transactions. Section 9–313 was one of the sections altered significantly by the 1972 revision of the Uniform Act. The analysis of this case would be considerably different had Pennsylvania adopted that revision.

interests. The distinction is comparable to the distinction between the execution of a deed to real property and the recording of that deed.

It is true that section 9–313(4) of the U.C.C., 13 Pa.C.S.A. § 9313(d), provides that an attached security interest in a fixture does not take priority over the interest of a subsequent purchaser of the real estate "if the subsequent purchase is made, . . . without knowledge of the security interest and before it is perfected. A purchaser of the real estate at a foreclosure sale other than an encumbrancer purchasing at his own foreclosure sale is a subsequent purchaser within this section." This provision, however, is in the conjunctive: a subsequent purchaser of real estate will prevail only if without knowledge. of the security interest *and* the interest is not perfected. *Architectural Cabinet Inc. v. Manley*, 3 U.C.C.Rep.Serv. 263, 14 Chester Co. Rep. 71 (1966). Appellants were not without knowledge. "Knowledge" is defined by the U.C.C. as "actual knowledge." § 1–201(25), 13 Pa.C. S.A. § 1201. In *Bloom v. Hilty*, 210 Pa.Super. 255, 232 A.2d 26, *rev'd on other grounds*, 427 Pa. 463, 234 A.2d 860 (1967), we said that oral notice at sheriff's sale of an attached but unperfected security interest would have been effective to protect the interest if such notice had been given. In reversing this court, the Supreme Court did not disavow our statement as to what would have been effective notice. Rather, it found that the buyer at the sheriff's sale already had a perfected security interest in the goods being sold. Appellants had no such interest.

Appellants' argument that the security interest in the silo and unloader was extinguished by appellees' payment to Penn Jersey of the underlying debt presents some difficulty.

 Appellants' argument is superficially appealing. Ordinarily, when a buyer who is in possession of the goods and is not in default completes payment, the seller's security interest is extinguished. It is difficult to see just what the buyer could gain by a formal assignment of the security interest. It might seem, therefore, that when appellees received from Penn Jersey an assignment of all of Penn

Jersey's rights, title and interest in the silo and unloader, they did not receive any interest on the basis of which they could pursue the replevin action that Penn Jersey had initiated. We have concluded, however, that appellees are entitled to maintain their action.

At the time of the assignment neither Penn Jersey nor appellees had possession of the silo and unloader. We believe a distinction should be drawn between a buyer in possession and a buyer out of possession. Under the terms of the installment sales contract, when appellees defaulted in their payments they lost their right to possession. That right shifted to Penn Jersey, and Penn Jersey asserted it by its action in replevin, two days before the sheriff's sale of the farm. When appellants bought the farm at the sheriff's sale they acquired actual possession of the silo and unloader, but that did not affect Penn Jersey's right to possession. When appellees settled with Penn Jersey, in 1972, they did more than discharge their debt; they reacquired their right to possession, which they had earlier lost by their default. To hold, as appellants say we should, that appellees may not now assert that right would be unjust. Appellees have bought and paid for the silo and unloader, and should have them, or damages for their conversion. Appellants' argument comes down to the assertion that appellees should not recover only because they are suing as Penn Jersey's assignee. Implicit in the argument is the admission that appellees could have asserted their right to possession by suing in their own names. Now, however, it may be too late for appellees to sue in their own names for the action might be barred by the statute of limitations. But whether or not the action would be barred, we see no need to require appellees to bring it. Appellants joined in the stipulation by which Penn Jersey's action in replevin was changed into an action in trespass for conversion, without any amendment, and the parties were realigned. If appellants believed that appellees could not assert their reacquired right to possession of the

silo and unloader except by bringing a new action, they should not have joined in the stipulation.

Affirmed.[5]

---

5. In their brief to this court, at 26, appellees ask that they be allowed additional damages as compensation for delay in payment, citing Pa.R.C.P. 238 and *Marrazzo v. Scranton Nehi Bottling Co., Inc.*, 438 Pa. 72, 263 A.2d 336 (1970). However, section (g) of Rule 238 provides that the rule does not apply to any case pending at the time the rule became effective—which this case was—*if* delay damages would previously have been allowable. The note appended to the rule cites *Marrazzo* as authority for examples of such cases. This case appears to be one in which delay damages would have been allowable, for although it sounds in tort, the compensation can be measured by market value. Accordingly, Rule 238 does not apply. Nor may appellees be awarded delay damages on the authority of *Marrazzo*. Under *Marrazzo*, whether delay damages should be assessed, and how much, are questions of fact. The decision of the lower court in this case made no finding as to delay damages. Nothing in the record indicates that appellees excepted to this lack of findings. Therefore, the issue has been waived. Pa.R.C.P. 1038(d).