**In re William Moore HAMMOND & Bonita Joy Hammond, d/b/a Cedarlane Dairy Farms, Debtors.**

**Bankruptcy No. 1–83–02177.**

United States Bankruptcy Court, E.D. Tennessee.

March 27, 1984.

---

F. Scott LeRoy, Thomas E. Ray, P.C., Chattanooga, Tenn., for debtors.

Arnold A. Stulce, Jr., Hatfield, Van Cleave, & Stulce, Chattanooga, Tenn., for Agristor Credit Corp.

## MEMORANDUM

RALPH H. KELLEY, Bankruptcy Judge.

The debtors objected to claims 1 and 2 filed by Agristor Credit Corporation as secured claims. The debtors contend that the claims are unsecured because Agristor failed to perfect its security interests by filing financing statements in the correct place. 11 U.S.C. § 544(a); Tenn.Code Ann. § 47–9–301(1)(b) & (3).

Agristor filed financing statements in McMinn County, Tennessee, where the silos and unloaders are located. This was the correct place of filing to perfect the security interests *if* the silos and unloaders are "fixtures". Tenn.Code Ann. § 47–9–401(1)(b). The debtors contend, however, that the silos and unloaders are "farm equipment". Perfection of a security interest in farm equipment requires filing in the county where the debtor resides. Tenn.

Code Ann. § 47–9–401(1)(a). The parties agree that the debtors reside in Polk County, Tennessee.

The question, then, is whether the silos and unloaders are "fixtures" subject to a perfected security interest or "farm equipment" in which Agristor's security interest is unperfected.

The parties agreed to allow the court to decide on a written record.

The debtors bought one silo and unloader from Southern Harvestore Company in 1976. The debtors bought the other silo and unloader from Volunteer Harvestore Systems in 1978. "Harvestore" is the name of the manufacturer or a brand name used by the manufacturer. The sales contracts were combined installment sale contracts and security agreements.

Both contracts contain the following provision:

> The Collateral shall be used primarily for business, shall at all times be and remain personalty, shall remain severable from the above-described premises (or any other premises) and shall not be or become fixtures as part of the premises irrespective of their use or manner of attachment to the premises, and are not and shall not become subject to the claims of any holder of superior title to the premises or to any encumbrances heretofore or hereafter placed on the premises by Buyer or assigns.... Buyer shall, at Seller's request, procure the execution of Fixtures Disclaimers by all persons with interests in the premises and shall pay all the filing or recording costs whenever filing or recording is deemed by the Seller to be desirable.

The contracts also provided that on default the seller would have all the remedies allowed by the Uniform Commercial Code. Those remedies include repossession and resale. Tenn.Code Ann. §§ 47–9–503 & 47–9–504. The contracts were assigned to Agristor.

Each silo is 20 feet in diameter by 80 feet high. Both silos and both unloaders were installed on the debtors' farm in McMinn County.

The parties introduced into evidence portions of the deposition of Agristor's district manager, James H. Ashby, II.

He described the construction of Harvestore silos. The first step is the pouring of a round concrete foundation. The depth of the foundation depends on the local footing requirements, but in all cases about 5 feet of the foundation is above ground. The bottom metal sheets are bolted to this part of the foundation. The builders then construct the *top* of the silo by assembling the "tub" sheet and attaching the roof to it. The next step is to raise the completed portion on jacks. The builders then use four or five curved metal sheets to make another vertical section of the silo. They jack up the completed portion and repeat the process until the silo is completed. They also install vertical stiffeners at the bottom and horizontal stiffeners on the sides. The bottom is welded into the silo in sections.

The metal side sheets have glass fused on the inside. A tight sealer like glue is used on the seams inside the silo and around the bolts.

A silo can be taken down by repeating the process in reverse. The silos are not easy to take down. The sealer on the seams has to be broken carefully in order to avoid separating the glass liner from the metal sheet. The liner cannot be replaced, but a new sheet can be substituted for a damaged one. A crew of four or five men would take four or five days to take down a 20' × 80' silo. Agristor does not have work crews that can do this, but the Harvestore dealers do.

Mr. Ashby also testified about the re-use of used silos. There is a market for used Harvestore silos. They are put up and can be taken down the same way all across the country. They are re-sold or re-leased through the Harvestore dealers. People in the business know that used silos can be bought and will contact dealers about buying them. When a used silo is put up, it is put up in warrantable condition. Damaged

parts are replaced. Used silos have generally had a good re-sale value, about 75% to 80% of the price of a new silo of the same size.

## Discussion

■ Outside of bankruptcy, the security agreements would control in any dispute involving only the debtors and Agristor. The court would have to conclude that the goods are farm equipment and Agristor's security interests are unperfected. However, the conclusion would make no difference. If no third party's rights were involved, perfection of the security interest would make no difference to Agristor's right to repossess the goods. This proceeding is different because the debtors can assert the rights of a hypothetical third party—a judgment lien creditor under Bankruptcy Code § 544. See also 11 U.S.C. §§ 1106 & 1107.

A judgment lien on the real property would not give the debtors priority over Agristor because it perfected its security interests in the goods as fixtures. Tenn. Code Ann. § 47–9–313. Therefore, the debtors contend that the silos and unloaders are farm equipment and Agristor's unperfected security interest is inferior to the judgment lien given by the Bankruptcy Code. Tenn.Code Ann. § 47–9–301.

■ What is a fixture? A fixture is an odd creature of the law. It has two distinguishing characteristics. First, it is so firmly attached to real estate that it is considered a "permanent" improvement and subject to the claims of anyone with an interest in the real estate. Second, it is so loosely attached to real estate that for financing purposes it retains some of its characteristics as a chattel. See J. Gervin, The Law of Fixtures in Tennessee, 42 Tenn.L.Rev. 354, 375 (1975).

This paradox has led to a common kind of dispute. One person claims the fixture as part of the real estate and another claims the fixture itself as personal property. Which person has the superior claim is determined under § 9–313 of the Uniform Commercial Code (UCC). Tenn.Code Ann.

§ 47–9–313. That section essentially leaves the question of whether goods are fixtures to Tennessee law other than the UCC.

■ Whether goods are fixtures is said to depend on (1) annexation to the real property, (2) intention of the parties and (3) removal without substantial injury to the realty. *In re Mayfield,* 31 B.R. 900 (Bkrtcy.E.D.Tenn.1983); *In re Belmont Industries,* 1 B.R. 608, 28 U.C.C.Rep.Serv. 846, (Bkrtcy.E.D.Tenn.1979); J. Gervin, The Law of Fixtures in Tennessee, 42 Tenn.L.Rev. 354, 376–378 (1975).

"Annexation" to the realty is a threshold test for determining whether the goods in question might be a fixture. *In re Belmont Industries,* 1 B.R. 608, 610 (Bkrtcy. E.D.Tenn.1979). Are the goods sufficiently attached that they might be considered a permanent improvement to the realty? The silos and unloaders easily pass the annexation test. They may be fixtures.

■ The next consideration is the "intention of the parties". When a third party is involved, the courts are not limited to considering their contract in determining the intention of parties. A third party is not likely to know what the contract provides, and the courts generally look to more objective criteria. Nevertheless, the contract is some evidence of the parties' intent.

■ In this case, the debtors as judgment lien creditors are arguing that the contract correctly states their intent and Agristor's intent that the silos and unloaders not become fixtures. The contract at least shows Agristor's intent that the goods not become fixtures while Agristor's security interest continues. A provision like this is meant to protect collateral from the claims of persons with an interest in the realty. The contract could not control their rights but the secured party could point to it as evidence of the debtors' intent that the goods not become fixtures. Certainly Agristor should not be allowed to deny a provision of the contract meant for its benefit. The court thus concludes that

Agristor is bound by the contract and cannot deny that the silos and unloaders are equipment. The result is that the court need go no further. Agristor's security interest is unperfected.

 However, assuming that Agristor can deny the contract, the court would still conclude that the silos and unloaders are equipment rather than fixtures.

The size of these silos, the manner in which they are attached, and the fact that they were annexed by the owner of the land all suggest that they were meant to be permanent improvements. On the other hand, there is an established market for used silos and unloaders of this kind. People involved in agricultural businesses know that this kind of silo can be moved from one farm to another. These silos are essentially like large grain bins often used on farms.

This court has held that grain bins were fixtures but those bins were part of a feed mill. *In re Mayfield*, cited above. The Tennessee Supreme Court held that for tax purposes certain grain bins were not fixtures. *Harry J. Whelchel Company v. King*, 610 S.W.2d 710 (Tenn.1980). The Arkansas Supreme Court held in one case that large grain bins were fixtures. *Corning Bank v. Bank of Rector*, 265 Ark. 68, 576 S.W.2d 949, 26 UCC Rep.Serv. 1367 (1979). In that case, however, the expert witness testified that grain bins were seldom moved. He knew of only two that had been moved and they had not been set on concrete foundations. On the other hand, silos like these are regularly dismantled, repossessed and resold. Even though dismantled and removed, the silos have substantial resale value. People in agricultural businesses realize that silos like these may be moved. Finally, in *McCarthy v. Bank*, the court held that a 20' × 60' Harvestore silo like the ones in question was not a fixture. 283 Pa.Super. 328, 423 A.2d 1280, 31 UCC Rep.Serv. 1462 (1980).

The final consideration is whether removal would substantially injure the realty. Obviously the land would be worth more for dairy or livestock farming if it had the silos and unloaders but that is not the controlling fact. If the silos were removed, the concrete foundations would be difficult to remove so that the land could be used for other purposes. The foundations would, however, be available to use for new silos. Thus, the proof was not clear as to how removal of the silos would affect the use or value of the land.

The court concludes that the silos and unloaders are not fixtures or in the alternative, that Agristor cannot deny that they are equipment as provided in the contract. Accordingly, the court will enter an order allowing Agristor's claims as unsecured.

This memorandum constitutes findings of fact and conclusions of law. Bankruptcy Rule 7052.