**In re William B. HESS and Jane L. Hess, Individually, Jointly and d/b/a Weebel Acres, Debtors.**

**William PINEO, esq., Trustee, Plaintiff,**

**v.**

**William B. HESS and Jane L. Hess, Individually, Jointly and d/b/a Weebel Acres, Debtors,**

**and**

**The First National Bank of Cochranton, Elder Sales And Service, Inc., GEHL Finance Ura E. Miller and Martha M. Miller, His Wife, Secured Creditors, Defendants.**

**Bankruptcy No. 85–00475E.
Motion No. 86–118E.**

United States Bankruptcy Court,
W.D. Pennsylvania.

May 29, 1986.

William Pineo, trustee.

Curtis Blystone, for Elder Sales and Service, Inc.

R. Charles Thomas, for First Nat. Bank of Cochranton.

## OPINION AND ORDER ON THE TRUSTEE'S MOTION FOR PUBLIC SALE OF PERSONAL PROPERTY AND OBJECTIONS FILED BY ELDER SALES AND SERVICE, INC. AND BY FIRST NATIONAL BANK OF COCHRANTON

WARREN W. BENTZ, Bankruptcy Judge.

This 29th day of May, 1986, upon consideration of the Trustee's MOTION FOR PUBLIC SALE OF PERSONAL PROPERTY FREE AND DIVESTED OF LIENS, and the Objection thereto filed by Elder Sales and Service, Inc., and the Objection of First National Bank of Cochranton, after notice and hearing, the court makes the following findings of fact and conclusions of law.

Elder Sales and Service, Inc. ("Elder") objected to the sale, claiming a security interest in the farm equipment, by virtue of a security agreement and a financing statement filed with the Prothonotary of Crawford County, Pennsylvania. The transaction which gave rise to the security interest occurred in May and June 1985. On or about May 21, 1985, the debtor executed and delivered to Elder an application and financial statement on which was a blank space for the county of residence of the applicant, and Crawford County was filled in. The debtor acquired the farm real estate in early 1985 and did not know what county the property was in. The form itself was filled out by the office manager of Elder who suggested to the debtor that the property was in Crawford County. In reliance upon the application, and believing that the property was in Crawford County, the Elder personnel filed the financing statement with the Prothonotary of Crawford County. In fact, the real estate was just across the county line and was located

in Mercer County. The sales personnel of Elder were well aware of this since they had visited the debtor's farm on prior occasions for sales to prior owners, and on several occasions for the instant sale to the debtors. But the sales personnel had nothing to do with the filing of the financing statement. Hence, at the moment of bankruptcy, the financing statement was on file in the wrong county. The trustee attacks the validity of the improperly perfected security interest.

■ On these facts, it is clear that the financing statement was not filed in the county in which it was required to be filed, pursuant to the Pennsylvania Uniform Commercial Code, 13 Pa.C.S.A. § 9401(a)(1), and therefore, the alleged lien was not perfected and is invalid in bankruptcy. If there were a rule allowing an alleged secured creditor a secured status where he was being misled by the debtor intentionally, we still could not find for Elder. We find no bad motive on the part of the debtor. Whatever mistakes the debtor made were innocent and were encouraged by the office personnel of Elder. Further, the sales personnel of Elder knew better than the debtors which side of the county line the debtor's farm was on. The sale and financing transaction was substantially under the control of the seller, Elder, except for the purchaser's decision to buy, and if there was an error in the paperwork, the error rested as much with Elder as with the debtor. The Court therefore concludes that Elder does not hold a perfected security interest in the debtor's farm equipment.

We turn now to the claim of First National Bank of Cochranton ("Bank"). The Bank has a first mortgage on the debtor's farm real estate. The Bank claims that its mortgage extends to certain personal property, to-wit: a Sterling barn cleaner, two Patz silo unloaders, and an electric cow trainer (equipment claimed by the Bank).

Each of the items of personal property claimed by the Bank to be a part of the real estate and therefore subject to the mortgage lien is in some manner attached to the real estate. The barn cleaner is a chain link device running in a concrete channel in the barn and powered by an electric motor; its purpose is to remove manure to a location outside the barn. The cow trainer is a group of electric shocking devices which hang over each stall. The silo unloader support frame rests on top of the silo and is bolted to it; the unloader mechanism hangs into the silo and removes silage in conveyor-belt fashion. The Court finds that the attachment in each case is not sufficient to convert the personal property items into realty, that there is no applicable intent of the parties under which such equipment would be part of the real estate, and that the claim of lien by the Bank under its real estate mortgage must be denied.

■ Under the law of Pennsylvania, whether personal property constitutes a part of the real estate varies according to the circumstances; furniture, vehicles and the like are clearly personal property in all events; a house, a barn, a well, and the like are clearly part of the real estate; other items, although fixed, depend upon the intent of the parties. *Clayton v. Leinhard*, 312 Pa. 433, 167 A. 321 (1933), defines the three categories in the following language at page 322:

"First, those which are manifestly furniture, as distinguished from improvements, and not peculiarly fitted to the property with which they are used; these always remain personalty. Second, those which are so annexed to the property that they cannot be removed without material injury to the real estate or to themselves; these are realty, even in the face of an expressed intention that they should be considered personalty ... Third, those which, although physically connected with the real estate, are so affixed as to be removable without destroying or materially injuring the chattels themselves, or the property to which they are annexed; these become part of the realty or remain personalty, depending upon the intention of the parties at the time of annexation; in this class fall such chattels as boilers and machinery affixed for

the use of an owner but readily removable."

■ The farm equipment claimed by the Bank is clearly within the third category. The equipment claimed by the Bank was in place when the debtors bought the farm, and the testimony did not reveal any specific intent.

The purchase agreement under which the debtors acquired the farm listed many items of personal property at various values, but did not list the equipment claimed by the Bank. The Bank argues that that shows an intent that such equipment was to be part of the realty. However, the debtor testified that he offered to pay one lump sum of $240,000 for the farm real estate, buildings, equipment and grain, and that he did not care how that lump sum price was allocated in the purchase agreement; that the seller could allocate prices any way he desired in drafting the purchase agreement. Moreover, the Bank was not a party to the sale transaction between the debtor and the debtor's vendor when the debtor purchased the property. The loan and mortgage documents between the debtor and the Bank make no mention of the equipment claimed by the Bank, nor is there any suggestion therein that the mortgage lien should attach to the equipment. Under these circumstances, we find that, with respect to the equipment claimed by the Bank, there was no specific intent as to whether they should or should not be considered to be part of the real estate.

The Court has been directed to the case of *Powl v. Graybeal,* 34 D. & C.3d 47 (1982) where the Court, relying on the third category articulated in *Clayton, supra,* i.e., the intent of the parties, found that the parties intended a silo to become attached to the realty. However, in *Powl,* the sales agreement specifically provided that the "equipment be affixed to the real estate." To reiterate, no such intention is discernible in this case, and it is therefore more analagous to *McCarthy v. Bank,* 283 Pa.Super. 328, 423 A.2d 1280 (1980) where the Court held a silo not to be part of the realty. The Court there reasoned that such a conclu-

sion was consistent with the sale agreement *and* with the fact that the silo could be readily removed without damage to the realty or the silo.

The Trustee has been authorized to proceed with the sale of all of the above-mentioned personal property divested of liens, with the liens, if and to the extent valid, being transferred to the proceeds, since the sale has been widely advertised and is expected to be well attended and the sale (with proceeds segregated where liens are contested) will preserve the issues for the parties for further judicial action if necessary.

It is

ORDERED that the objections of First National Bank of Cochranton and those filed by Elder Sales and Service, Inc. to the sale of personal property by the Trustee shall be, and they hereby are, refused and dismissed, and their respective claims as lien creditors on personal property of the debtors are denied.