**William B. HUBBARD, Receiver for First National Bancshares Financial Services, Inc., a Tennessee Corporation, Plaintiff/Appellee,**

v.

**HARDEMAN COUNTY BANK, and Ernest Vickers, III, Defendants/Appellants.**

Court of Appeals of Tennessee, Western Section, at Jackson.

Aug. 24, 1993.

Certiorari Denied by Supreme Court Dec. 28, 1993.

William C. Bell, Jr., Rainey, Kizer, Butler, Reviere & Bell, Jackson, for appellee, William B. Hubbard, Receiver.

J. Robert Walker, John R. Branson, Heiskell, Donelson, Bearman, Adams, Williams & Kirsch, Memphis, for appellant, Hardeman County Bank.

HIGHERS, Judge.

This case involves a dispute over proceeds from the sale of two one-story branch bank buildings ("buildings"). Defendant, Hardeman County Bank ("HCB"), claims an interest in the proceeds because it held a perfected security interest in the buildings as personalty. Plaintiff, William B. Hubbard, who is the receiver for First National Bancshares Financial Services, Inc. ("FNBFS"), claims an interest in the proceeds because he filed a lien *lis pendens* covering the buildings. Hubbard asserts that HCB's claimed security interest in the buildings is invalid because HCB perfected its interest as if the buildings were personalty and not fixtures. The trial court granted Hubbard's motion for summary judgment, holding that the buildings were fixtures. HCB appealed.

On January 4, 1991, Hubbard filed a complaint for declaratory judgment and a restraining order against HCB and defendant, Ernest Vickers, III, to prohibit the disposition of the sale proceeds of three buildings. The complaint alleges the following facts which are undisputed. Vickers owned three buildings. Vickers borrowed $926,000.00 ("note") from defendant HCB and gave HCB a security interest in the buildings. The proceeds from the note were not used to purchase the buildings. HCB perfected its security interest in the buildings as personalty and not as fixtures. Vickers defaulted on the note and the bank gave notice of a proposed sale of the buildings.

Meanwhile, Hubbard, as receiver of FNBFS, filed a complaint alleging that Vickers had stolen approximately $210,778.29 from FNBFS to pay part of the balance of the note Vickers owed to HCB. Apparently Vickers served in an official capacity at FNBFS.

Upon receiving notice of HCB's proposed sale of the buildings, Hubbard filed the present complaint to enjoin the disposition of the proceeds of the sale. Hubbard alleges that he filed three liens *lis pendens* on the buildings to encumber the interest of Vickers. Hubbard alleges that he filed the liens to set aside fraudulent conveyances by Vickers and/or to establish a constructive trust on the sale proceeds of the buildings for the benefit of FNBFS. Hubbard alleged that the buildings are fixtures. Hubbard further alleged that his liens *lis pendens* on the buildings took priority over the security interest claimed by HCB because HCB improperly perfected its security interest in the buildings as personalty and not fixtures. The complaint asks for a declaratory judgment of

the parties' respective rights and obligations to the buildings.

Thereafter, the buildings were sold and the court entered a consent order requiring HCB to place $210,778.29 of the proceeds from the sale of two of the buildings plus accrued interest with the court clerk pending final resolution of Hubbard's declaratory judgment action. The court had previously ordered that if a third party purchased the buildings, then Hubbard would release its liens *lis pendens* as to the buildings and his rights would attach to the proceeds from the sale of the buildings, pending final resolution of the declaratory judgment complaint.

HCB answered and alleged that the buildings were personalty. HCB denied Hubbard's right to encumber personalty by a lien *lis pendens* and asked the court to declare that the buildings were personalty and therefore not subject to a lien *lis pendens*. HCB denied that Hubbard's liens *lis pendens* would take priority over HCB's security interest in the buildings. HCB alleged that they properly perfected their security interest in the buildings as personalty and not fixtures.

HCB filed a motion for summary judgment based upon two arguments which it also asserts on appeal. First, HCB argued that the proceeds were not subject to a constructive trust because Vickers did not use the alleged stolen funds to purchase the buildings. Second, HCB argued that it properly perfected its security interest in the buildings as personalty. HCB argued that even if Hubbard is entitled to a constructive trust, a beneficiary of a constructive trust cannot take priority over a secured party who took a security interest without knowledge of a claim as to which the trust is asserted. In support of this argument, HCB points to the affidavit of Mike Rowland, the president of HCB, in which Rowland stated that he had no knowledge of any conversion or misappropriation of funds by Vickers or anyone acting on Vickers' behalf. Hubbard's complaint does not allege that HCB had knowledge of the alleged misappropriation of funds by Vickers. Hubbard filed a motion for summary judgment alleging that the buildings are fixtures and that therefore his liens *lis pendens* took

priority over HCB's improperly perfected security interest. Hubbard further argued that he was entitled to a constructive trust on the proceeds from the sale of the buildings.

The court granted summary judgment for Hubbard. Specifically, the court held:

The issue before the Court on the parties' Motions For Summary Judgment is whether branch bank buildings in which both the Plaintiff and Hardeman County Bank claim liens are realty and thereby subject to the lien lis pendens claimed by the Plaintiff. The Court considered all the evidence submitted by the parties and the entire record in the cause, and the legal authorities submitted by the parties, and is of the opinion that the branch bank buildings involved in this case should be considered realty, and that Plaintiff is entitled to have a lien lis pendens imposed upon the buildings and/or the proceeds of their sale, subject to the rights of Plaintiff, if any, established in the case of *Hubbard, et al. v. First National Bancshares Corporation, et al.* in the Circuit Court of Madison County, Tennessee, Cause No. C90–305.

IT IS FURTHER ORDERED that this is a final judgment pursuant to Rule 54.02 of the Tennessee Rules of Civil Procedure.

The relevant facts are undisputed. The issue on appeal is a question of law and our review is *de novo*. T.R.A.P. 13(d). *Byrd v. Hall,* 847 S.W.2d 208 (Tenn.1993).

On appeal, HCB asserts that Hubbard is not entitled to a constructive trust on the proceeds of the building because Vickers did not use the alleged misappropriated funds to purchase the buildings and because HCB has no knowledge of Vickers' alleged misappropriation of funds. Hubbard argues that the issue of whether he is entitled to constructive trust is not properly before the court because the separate lawsuit in which Hubbard has alleged that Vickers misappropriated funds has not been decided. Citing the trial court's opinion, *supra,* Hubbard asserts that the only issue before the trial court was whether the buildings were realty and subject to the liens *lis pendens*. We have concluded that the issue of whether Hubbard is entitled to a constructive trust on the proceeds is properly

before this court because HCB asserts that it is entitled to the proceeds which are currently held with the clerk.

The issues on appeal as we perceive them are: (1) Whether the buildings are real estate within the meaning of T.C.A. § 20–3–101(a); (2) Whether Hubbard is entitled to a constructive trust on the proceeds from the sale of building; and, (3) If Hubbard has a valid lien *lis pendens* on the real property, whether that lien takes priority over HCB's security interest. Issue number three requires us to answer the question of whether the buildings are personalty or fixtures. We acknowledge that if the buildings are personalty, then HCB has a properly perfected security interest which takes priority over Hubbard's claimed interest pursuant to the liens *lis pendens*. T.C.A. §§ 47–9–301(1)(a) and (3) and 47–9–312(5)(a). We believe, however, that the proper course is to address the issues as we perceive them.

The evidence in the record establishes the following facts about the buildings. Vickers purchased the buildings at issue from National Bank Builders and Equipment, Inc. in Walls, Mississippi. One of the buildings is approximately 14 feet by 40 feet and weighs approximately 80,000 pounds. The other two buildings measure approximately 14 feet by 30 feet and weigh approximately 60,000 pounds.[1] The buildings are one-story and have a bathroom and kitchen. The buildings were constructed in their entirety in National Bank Builders' factory in Walls, Mississippi, including wiring for the electrical and alarm systems and installation of plumbing, bathroom, sewers and utility hookups. The record contains the deposition of Lester Simpson, the chairman of the board of National Bank Builders and Equipment. Simpson testified that, "the buildings are totally complete with all the plumbing and everything built and tested in the factory." When completed, each of the buildings was loaded onto a truck and shipped to its site in Jackson, Tennessee, which was prepared by grading it and placing four concrete footings on the ground. The buildings sit on footings

and are held in place by their own weight. Vickers and/or First National Bank of Jackson installed driveways, sidewalks, outside lighting, shrubs and parking. The only way in which the buildings are attached to the realty is by the utility hookup. Simpson testified that the buildings "are designed and intended to be movable at the will of the owner and can be moved relatively inexpensively." The cost of moving the buildings is the only disputed issue of fact. Simpson recalls that it cost approximately $20,000.00 for his company to move a building while Vickers testified that the cost was approximately $3,000.00. Simpson testified that his company can move a building in one day by lifting the building with a hydraulic jack or a crane and placing the building on a flat-bed truck which transports it to the new site. Two of the buildings in this case were actually moved by Vickers and/or First National Bank. Vickers testified in his deposition that he purchased the buildings because they were portable. He stated, "I purchased these buildings specifically because they need not be permanently affixed to the ground but can be moved as market conditions or needs change." Vickers did not own the land on which the buildings were situated. He leased the buildings to First National Bank of Jackson which held two five-year ground leases and one ten-year ground lease. The "intended use" section of the ground leases provided that the parties' intent was to place a portable branch bank building on the property and that the buildings were not to attach to the land or become pertinent thereto.

The first issue is whether the buildings are real estate within the meaning of T.C.A. § 20–3–101(a) which provides:

> When any person, in any court of record, by declaration, petition, bill or cross bill, shall seek to fix a lien lis pendens on real estate, or any interest therein, situated in the county of suit, in furtherance of the setting aside of a fraudulent conveyance, ... tracing a trust fund, ... he shall file for record in the register's office of the county an abstract, ... containing the

1. Hubbard filed lien *lis pendens* on three buildings. The proceeds from the sale of two buildings are presently held by the clerk.

names of the parties to such suit, a description of the real estate affected, its ownership, and a brief statement of the nature and amount of the lien sought to be fixed.

■ The controlling test as to whether property connected with real estate is to be deemed realty or mere chattel, removable at the pleasure of the owner, is the intention and purpose of the erection. *Johnson v. Patterson*, 81 Tenn. 626 (1884). Looking at the objective and subjective factors indicating intent and purpose, we conclude that the buildings are personalty and not subject to lien *lis pendens*. The buildings were constructed to be portable, such that they could be moved or sold as market conditions or a need for the buildings changed. The purpose of the buildings was to provide branch bank locations. The ground leases expressly provided that the buildings were not to become fixtures. Two of the buildings were actually moved. If the land upon which the buildings were located was sold, the owner of the land would not own the buildings.

■ The next issue is whether Hubbard is entitled to a constructive trust on the proceeds from the sale of the bank buildings. HCB argues that Hubbard is not entitled to a constructive trust because Vickers owned the bank buildings prior to the alleged misappropriation of funds and that therefore the alleged stolen funds cannot be traced to the buildings. Alternatively, he argues that even if Hubbard is entitled to a constructive trust, the beneficiary of the constructive trust cannot take priority over a secured party who took a security interest without knowledge of the claim as to which the trust is asserted.

A constructive trust cannot be imposed against a party who receives property in good faith and without notice of an adverse claim. *Continental Grain Co. v. First National Bank of Memphis*, 162 F.Supp. 814, 833 (W.D.Tenn.1958). A constructive trust may only be imposed against one who, by fraud, actual or constructive, by duress or abuse of confidence, by commission of wrong, or by any form of unconscionable conduct, artifice, concealment or questionable means, has obtained an interest in property which he ought not in equity or in

good conscience retain. *Livesay v. Keaton*, 611 S.W.2d 581, 584 (Tenn.App.1980). *See also Sanders v. Forcum–Lannom, Inc.*, 225 Tenn. 637, 475 S.W.2d 172, 174 (1972).

*Intersparex Leddin KG v. Al–Haddad*, 852 S.W.2d 245, 249 (Tenn.App.1992). The fact that Vickers owned the buildings prior to the alleged misappropriation of funds is not controlling. Vickers borrowed money from HCB and gave HCB a security interest in the buildings. By repaying the loan, HCB's interest in the buildings decreased and Vickers' unencumbered interest increased. Hubbard has alleged that Vickers used stolen funds to repay the loan and thus increased his interest in the buildings. "A trust follows trust property or funds where the trustee applies or encumbers such property or funds to the satisfaction of his private debts, at least where the creditor has actual or constructive notice of the breach of trust involved in the transaction." 76 Am.Jur.2d *Trusts* § 319 (1992). In this case, we conclude that Hubbard is not entitled to a constructive trust because there is no allegation that HCB had notice of Vickers' alleged misappropriation of funds to make payments on his debt to HCB. HCB gave value for and received the loan payments in good faith and without notice that Vickers allegedly used stolen funds from FNBFS.

■ The third issue on appeal is whether HCB has a properly perfected security interest in the buildings. HCB perfected its security interest in the buildings as if the buildings were personalty. Hubbard asserts that the buildings are fixtures and that therefore HCB's security interest is unperfected. The Uniform Commercial Code does not define "fixtures," but rather directs that the common law provides the definition of fixtures. T.C.A. § 47–9–313(1)(a) states that, "Goods are 'fixtures' when they become so related to a particular real estate that an interest in them arises under real estate law." Under Tennessee law, the determination of whether goods are fixtures depends upon: "(1) annexation to real property, (2) intention of the parties, and (3) whether the alleged fixture can be removed without substantial injury to the realty." *In re Hammond*, 38 B.R. 548,

551 (Bankr.E.D.Tenn.1984). The predominant factor is the intention of the parties.

In Tennessee only those chattels are fixtures which are so attached to the freehold that, from the intention of the parties and the uses to which they are put, they are presumed to be permanently annexed, or a removal thereof would cause serious injury to the freehold. The usual test is said to be the intention with which a chattel is connected with realty. If it is intended to be removable at the pleasure of the owner, it is not a fixture. (citations omitted).

*Harry J. Whelchel Co. v. King,* 610 S.W.2d 710, 713 (Tenn.1980).

█ Applying the above factors to the facts of this case, we conclude that the buildings are personalty and that HCB properly perfected its security interest. The buildings are annexed to the property only by utility hookups. Although there have been improvements to the property to enhance the appearance of the buildings, these improvements do not affect how the buildings are attached to the real estate under the facts of this case.

We have discussed the objective and subjective intent of the parties under issue one, *supra*, and incorporate that analysis here. The intention of Vickers, who leased the buildings to First National Bank of Jackson, and the intention of First National Bank of Jackson was that the buildings were portable and could be removed prior to or when the leases expired.

Likewise, the last factor, whether the buildings could be removed without substantial injury to the realty, supports a finding that the buildings are personalty. The evidence was that the buildings could be removed without injury to the property. The buildings rest on concrete footings from which they are simply lifted and placed upon a flat-bed truck. Although the parties dispute the expense of moving the buildings, we do not think the expense is controlling in this case. The landscaping and improvements to the property were not such as to injure the property upon removal of the buildings.

The judgment of the trial court is reversed and the case is remanded for proceedings consistent with this opinion. Costs on appeal are assessed to the plaintiff.

TOMLIN, P.J. (W.S.), and McLEMORE, Special Judge, concur.