111 P.3d 430

**FL RECEIVABLES TRUST 2002–A, a Delaware statutory trust, Plaintiff–Appellant,**

v.

**ARIZONA MILLS, L.L.C., an Arizona limited liability company, Defendant–Appellee.**

No. 1 CA–CV 04–0229.

Court of Appeals of Arizona, Division 1, Department B.

May 12, 2005.

Tiffany & Bosco, P.A. by Christopher R. Kaup, Pamela L. Kingsley, Phoenix and Thacher, Proffit & Wood by John Doherty, New York, N.Y., Attorneys for Plaintiff–Appellant.

Philip R. Wooten, P.C. by Philip R. Wooten, Phoenix, Attorneys for Defendant–Appellee.

## OPINION

LANKFORD, Judge.

¶ 1  Florida Receivables Trust 2002–A ("lender") appeals from judgment in favor of Arizona Mills, L.L.C. ("landlord").  Although a number of issues are raised on appeal, the dispositive issue is whether the landlord's interest in certain improvements on real property is superior to the secured lender's interest.  Because the security interest is superior, we reverse.

¶ 2  The landlord entered into a written lease with a tenant.  The tenant desired to acquire additional financing.  The landlord and the tenant executed an amendment to the lease permitting the tenant to secure additional financing.[1]  As a prerequisite to financing, the lender required that the landlord subordinate its interests in property arising from the lease agreement by executing a consent and waiver.  The landlord agreed, and thereafter executed the consent and waiver, subordinating all but the landlord's interest in the land itself.

¶ 3  The relevant portion of the consent and waiver reads:

Lessor subordinates each and every right which Lessor now has, or may hereafter have, under the laws of the state in which the Premises are located, or by virtue of the Lease now in effect or hereafter executed by Lessor and Borrower, to levy or distrain upon the Leasehold Improvements or the Equipment for rent, in arrears, in advance, or both, or to claim or assert title to, or any right or interest whatsoever in, the Leasehold Improvements or the Equipment for rent, in arrears, in advance, or both.

¶ 4  The tenant later defaulted under the lease.  The landlord and the lender disagreed as to what property rights each had in the improvements on the real property, including the building and fixtures.

---

1.  Section 12.7 of the lease amendment states:
    (a) Landlord hereby consents to the execution, delivery, performance and recordation of a mortgage or deed of trust, assignment of rents and leases, security agreement and fixture filing (collectively, the "Leasehold Mortgage"), in favor of a bank, insurance company, recognized leasehold financing company or other institutional lender (a "Leasehold Mortgagee") encumbering the FF & E, the Improvements and/or Tenants' interest in the Lease. . . .
    (b) Landlord hereby subordinates to the lien of the Leasehold Mortgage (including UCC–1 Financing Statements), any lien of Landlord in the Improvements and FF & E of Tenant (but not the land underlying the Premises) provided for in this Lease and any statutory or possessory [sic] liens including, without limitation, rights of levy or distraint for rent, Landlord may have or assert under this Lease against any of the assets of the Tenant under this lease.
    The "FF & E" is defined in the amendment as "the kitchen appliances, furniture, fixtures and equipment."

¶ 5 Lender commenced this action to determine the competing claims. Both parties filed cross-petitions for injunctive relief. The parties stipulated that, preliminary to ruling on injunctive relief, the superior court would determine certain issues regarding the rights of the parties to the improvements.[2] The superior court ruled in favor of Defendant, effectively deciding the parties' rights, and entered a judgment certified as final and appealable. *See* Ariz. R. Civ. P. 54(b).

¶ 6 Lender timely appeals. We have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") section 12–2101(B) (2003). Contract and lease interpretations are matters of law which we review de novo. *See Andrews v. Blake*, 205 Ariz. 236, 240, ¶ 12, 69 P.3d 7, 11 (2003). Questions of statutory interpretation are also reviewed de novo. *Anderson v. Indus. Comm'n of Ariz.*, 205 Ariz. 411, 412, ¶ 2, 72 P.3d 341, 342 (App.2003).

¶ 7 The landlord contends that the tenant's default "reverted" any interest tenant had in the property to the landlord. The landlord further argues that because the lender's interest derived from the tenant's rights, the lender's interest terminated upon tenant's lease default.

¶ 8 Whether the landlord has an interest in the property is not dispositive. Rather, the question is: Whose rights are superior, the landlord's or the lender's? Accordingly, we assume that landlord has an ownership interest in the property that it acquired when the tenant defaulted.

¶ 9 The Uniform Commercial Code ("U.C.C.") governs the determination of these competing rights. The U.C.C. upholds a security interest against an ownership interest when one of two conditions are met: the owner consents to the creation of the security interest, or the owner has given the right to remove the goods to the debtor. *See*

A.R.S. § 47–9334(F) (Supp.2004) (U.C.C. § 9–313(5) (1972)). Thus, assuming that landlord has an ownership interest as it contends, its interest yields to the security interest if either of these conditions were met.

¶ 10 The language of the U.C.C. is not as clear as it might be. To understand the rules for creating an interest in fixtures, we must look to the history of the U.C.C. Prior to 1972, the U.C.C. provisions regarding the priority of security interests in fixtures were problematic. The code conferred security interests in real property without using the real property recording system. As a result, a lender or buyer of real property might be subject to a U.C.C. security interest even though the real property records revealed no such interest. *See* U.C.C. § 9–313 Official Reasons for 1972 Change and Official Comment.

¶ 11 This changed when the drafters adopted the current U.C.C. text in 1972, which was later enacted in Arizona in 1999. *See* A.R.S. § 47–9334. The amendment addressed the conflict between the two systems by generally requiring real property recordation for "fixture filings." "In cases not governed by subsections D through H of this section, a security interest in fixtures is subordinate to a conflicting interest of an encumbrancer or owner of the related real property other than the debtor." A.R.S. § 47–9334(C). A security interest in fixtures may be perfected under real property law. A.R.S. § 47–9334(B). Thus, the general rule is that a fixture filing prevails only when it is recorded as a real property interest.

¶ 12 The U.C.C. created exceptions to the rule of real property recordation, however. A.R.S. § 47–9334(D)–(F). Applicable to this case is the exception that an ownership interest in property is subject to the secured interest of a lender in two circumstances: (1)

---

**2.** Specifically, the parties asked the superior court to determine "[w]hether the Trust has any rights or claims to, including a lien against or security interest in, the Premises and the Improvements, including the Building." The superior court ruled that the landlord "consented to [tenant's] grant of a lien on its interest in the Ground Lease and the Leasehold Improvements, as well as a security interest in [tenant's] FF & E

located on the premises" and that the landlord "subordinated its landlord's lien on [tenant's] property located on the premises." However, it also found that "[t]here was no consideration for any purported subordination of [the landlord's] ownership interests in the Building." Moreover, the court ruled that when the lease terminated, the landlord "acquired fee simple title to the Improvements, including the building."

when an owner consents to the security interest or has disclaimed an interest in the goods; or (2) when the debtor has the right to remove the goods. Arizona Revised Statute § 47–9334(F), our version of U.C.C. § 9–313(5), states:

A security interest in fixtures, whether or not perfected, has priority over a conflicting interest of an encumbrancer or owner of the real property if:

1. The encumbrancer or owner has consented, in an authenticated record, to the security interest or disclaimed an interest in the goods as fixtures; or

2. The debtor has a right to remove the goods as against the encumbrancer or owner.

A.R.S. § 47–9334(F). The priority of the security interest "continues for a reasonable time if the debtor's right to remove the goods as against the encumbrancer or owner terminates." A.R.S. § 47–9334(G).

¶ 13 This provision means that an unfiled, and thus unperfected, security interest in fixtures prevails over an ownership interest if either condition is met. In short, "no perfection at all is required ... for the fixture interest to have priority over a real estate encumbrancer or owner who waives any right to the fixture, or over an encumbrancer or owner against whom the debtor can under local law remove the fixture regardless of consent." Peter F. Coogan, *The New UCC Article 9*, 86 Harv. L.Rev. 477, 494–95 (1973).

¶ 14 The exception applies to security interests in a tenant's fixtures. "The status of fixtures installed by tenants ... is defined by paragraph(5)(b) [A.R.S. § 47–9334(F)(2) ] to the effect that if the debtor (tenant or other interest mentioned) has the right to remove the fixture as against a real estate interest, the secured party has priority over that real estate interest." U.C.C. § 9–313, cmt. 6. *See also* Alphonse M. Squillante, *The Law of Fixtures: Common Law and the Uniform Commercial Code, Part II: The UCC and Fixtures*, 15 Hofstra L.Rev. 535, 576 ("The Official Comment makes it clear that [U.C.C.

§ 9–313(5) ] encompasses tenants, licensees, holders of easements, and other persons.").

¶ 15 The security interest falls within these exceptions. The landlord both consented to the security interest and ceded to the debtor a right to remove the fixtures. It consented through the consent and waiver agreement. It also entered into a lease permitting the tenant to "remove the building and all fixtures therein." [3] Therefore, the leasehold improvements are subject to the lender's security interest under A.R.S. § 47–9334(F)(2).

¶ 16 This result makes economic sense. The U.C.C. rule facilitates borrowing and the addition of value to real property. The borrower made the improvements that added value to the property and is entitled to use its capital as security for borrowing. The landlord neither financed nor built the improvements. To protect the landlord would stifle the development of leased realty because lenders would be less willing to risk lending money without a security interest in the property. To hold to the contrary "would chill the availability of short-term credit for modernization of real estate by installation of new fixtures and in the long run could not help real estate lenders." U.C.C. § 9–313, cmt. 6. The result in this case encourages tenants to enhance the value of realty by creating improvements and "will result in the modernization and improvement of real estate rather than in its deterioration and will on balance benefit long-term real estate lenders." *Id.*

¶ 17 The result also does not present the problem of concern to the U.C.C. draftsmen. No real property recordation is needed in this situation. The owner subject to the security interest is one who has either consented to the security interest or granted to the debtor the right to remove the goods. The owner thus has notice that his interest may be subject to a security interest because he has created the conditions that permitted the security interest to arise.

¶ 18 The landlord relies on paragraph four of the consent and waiver to argue that some fixtures are not subject to the security

---

3. The lease agreement provided that the tenant could remove the property upon notice if it were not in default. It also provided that termination of the lease would forfeit this right, giving landlord all rights to the property.

interest. Paragraph four states in part that "notwithstanding the foregoing and without limitation said Equipment and Leasehold Improvements shall not include heating and air conditioning equipment, plumbing, and floor, ceiling or wall coverings or any other non-trade fixtures in the Premises." Even if this clause limits the landlord's consent, however, it does not necessarily preclude the security interest. Consent is only one of the ways a security interest can arise; the debtor's right to possession is another. Under the lease, the tenant had the right to "remove the Building and all fixtures therein from the Premises." Under the U.C.C., that is an independent basis for the security interest. We therefore need not determine the meaning of paragraph four.

¶ 19 The next issue is whether the consent and waiver was supported by consideration. The superior court found that no consideration was given. But none is required merely to consent to the creation of a security interest or waive rights. The U.C.C. requires no consideration for effective consent. See A.R.S. § 47–9334(F). A "[party's] 'waiver' . . . is his own voluntary action; and in order to be legally effective, it is not necessary that the [other party] shall have given any consideration for it or shall have changed his position in reliance upon it." *Angus Med. Co. v. Digital Equip. Corp.*, 173 Ariz. 159, 164, 840 P.2d 1024, 1029 (App.1992) (quoting 3A Arthur L. Corbin, *Corbin on Contracts* § 752 (1960)). Even if consideration were necessary, it would invalidate only the consent basis for the security interest, not the basis in the debtor's right of removal.

¶ 20 The landlord nevertheless contends that the lender's security interest does not apply because A.R.S. § 47–9334(A) provides that "[a] security interest does not exist under this chapter in ordinary building materials incorporated into an improvement on land." This is true to the extent that such materials are "incorporated" into the land. The ultimate test for whether such items are subject to a U.C.C. security interest or are "incorporated" and must be recorded as real property interests is whether the debtor has the right to remove them. The comments to the U.C.C. make this clear:

Goods may be technically 'ordinary building materials,' e.g., window glass, but if they are incorporated into a structure which as a whole has not become an integral part of the real estate, the rules applicable to the ordinary building materials follow the rules applicable to the structure itself. The outstanding examples presenting this kind of problem are the modern 'mobile homes' and the modern prefabricated steel buildings usable as warehouses, garages, factories, etc. In the case of mobile homes, most of them are erected on leased land and the right of the debtor under a mobile home purchase contract to remove the goods as lessee will make clear that his secured party ordinarily has a similar right. See paragraph 5(b) [A.R.S. § 47–9334(F)(2) ].

U.C.C. § 9–313, cmt. 2. *See also* cmt. 6 ("The status of fixtures installed by tenants . . . is defined by paragraph (5)(b) to the effect that if the debtor (tenant . . .) has the right to remove the fixture as against a real estate interest, the secured party has priority over that real estate interest."). The lease agreement conferred upon debtor the right to remove the "[b]uilding and all fixtures." Accordingly, the improvements were subject to the U.C.C. security interest. *Cf. Hubbard v. Hardeman County Bank*, 868 S.W.2d 656 (Tenn.App.1993) (bank buildings removable by tenant were not "fixtures" and U.C.C. § 9–313 security interest was valid).

¶ 21 The landlord also contends that the lender had no security interest because the tenant's default "reverted" ownership of the improvements to landlord. Assuming that landlord acquired an ownership interest upon tenant's default, that does not decide the issue. The U.C.C. specifically provides that the owner's interest is subject to the security interest if the owner consents or the debtor has the right of removal. A.R.S. § 47–9334(F). It also provides that when the security interest rests on the debtor's right of removal, "[t]he priority of the security interest . . . continues for a reasonable time if the debtor's right to remove the goods as against the . . . owner terminates." A.R.S. § 47–9334(G). Thus, even after tenant's default, which forfeited the debtor's

right of removal, the security interest continued for a reasonable time.

¶22 The parties also dispute whether proper notice of termination under the lease was given, whether the lease was terminated as to lender, and whether the superior court's admission of certain extrinsic testimony was proper. These contentions, however, relate to landlord's rights. We have assumed that landlord had ownership rights and determined that even if it did, the lender's security interest is valid. We therefore do not reach the remaining questions raised.

¶23 Accordingly, we reverse the superior court's judgment and remand with directions to enter judgment in favor of the lender.

CONCURRING: MAURICE PORTLEY, Presiding Judge, and PHILIP HALL, Judge.