643 A.2d 81

Christopher M. NOLL, a Minor, by His Parent and Natural Guardian Timothy NOLL; Timothy L. Noll and Darlene M. Noll, his wife, Appellants at No. 25,

v.

HARRISBURG AREA YMCA and Newport Area School District, Deanna Boles, Thomas R. Marshall, Jr.

v.

PADDOCK POOL BUILDERS, INC., Paddock Pool Equipment Co., Inc., Paddock Acquatic Facilities, Frost Company, Sta–Rite Industries, Inc. and YMCA of the USA.

Appeal of: STA–RITE INDUSTRIES, INC. at No. 26.

Supreme Court of Pennsylvania.

Argued Jan. 27, 1994.

Decided June 14, 1994.

276

John P. Penders, Audrey L. Jacobsen, Philadelphia, for Sta–Rite.

Anthony Stefanon, Harrisburg, for Nolls.

Before NIX, C.J., and FLAHERTY, ZAPPALA, PAPADAKOS, CAPPY, CASTILLE and MONTEMURO, JJ.

## OPINION

MONTEMURO, Justice.

This is an appeal from a decision of the Superior Court (Hudock and Hester, JJ., Popovich, J., concurring and dissenting) reversing an Order of the Court of Common Pleas of Dauphin County (Natale, J.) and remanding the case for a factual hearing.

Cross-petitioner, Sta–Rite Industries made a motion for leave to amend its answer and new matter to plead the statute of repose found at 42 Pa.C.S.A. § 5536[1]. The trial court refused to grant leave to amend finding that Sta–Rite could not plead the statute of repose as a matter of law. The Superior Court held that Sta–Rite's ability to plead the statute of repose as a defense turned on the intent of co-defendant, Harrisburg Area YMCA, in installing the diving blocks which are the subject matter of the instant lawsuit. The Superior Court remanded the case for a factual determination of the

---

1. 42 Pa.C.S.A. § 5536 provides in pertinent part:

 **§ 5536. Construction Projects**
 (a) General Rule— ... a civil action or proceeding brought against any person lawfully performing or furnishing the design, planning, supervision, or observation of construction, or construction of any improvement to real property must be commenced within 12 years after the completion of construction of such improvement to recover damages for:

 * * * * * *

 (3) Injury to the person or for wrongful death arising out of any such deficiency.

intent of YMCA after which the trial court was to determine anew whether Sta–Rite's pleading should be allowed.

The issues presented for our review are: (1) whether in light of our decision in *McConnaughey v. Building Components, Inc.,* 536 Pa. 95, 637 A.2d 1331 (1994) (Papadakos, J. with two Justices joining and three concurring in the result), Sta–Rite is within the class protected by the statute as a manufacturer; and (2) whether the starting blocks in question are improvements within the meaning of the statute. For the reasons that follow, we reverse the order of the Superior Court, 416 Pa.Super. 284, 611 A.2d 219 and affirm the trial court's order refusing Sta–Rite leave to amend its answer.

The pertinent facts are as follows. On May 17, 1987, Plaintiff Christopher Noll, then 17 years of age, dove from a starting block into a swimming pool at the West Shore Branch of the YMCA. Noll dove into 3 and ½ feet of water and suffered quadriplegic injuries. This starting block was manufactured and sold by co-defendant Sta–Rite. Plaintiffs commenced this action against Sta–Rite and co-defendant Harrisburg YMCA by Complaint filed on September 8, 1988. Sta–Rite filed its answer with new matter on February 16, 1989 raising the defenses of assumption of risk, comparative negligence, substantial change of the product, and misuse of the product. It did not plead the statute of repose as a defense. On March 19, 1991, three years later, Sta–Rite filed a Motion for Leave to Amend New Matter to plead the statute of repose. The trial court held that starting blocks were not improvements to real estate, and, therefore, Sta–Rite could not assert the affirmative defense of the statute of repose. The case was appealed to the Superior Court which held that the starting block's status as an improvement depended on the intent of the YMCA in installing the blocks. The Superior Court remanded the case for an evidentiary hearing to determine the intent of the YMCA. Plaintiff and co-defendant Sta–Rite both petitioned this court for an allowance of appeal which we granted.

■■■ Procedurally, this case comes to us from a denial of Sta–Rite's motion to amend its answer. The first procedural issue we must address in this case is whether the denial of Sta–Rite's motion to amend its pleading is a final appealable order. It is well settled that only final orders may be appealed. Pa.R.A.P. 341 [2]; *T.C.R. Realty, Inc. v. Cox,* 472 Pa. 331, 337, 372 A.2d 721, 724 (1977). *See also Schaffer v. Litton Systems Inc.,* 372 Pa.Super. 123, 125, 539 A.2d 360, 361, *appeal denied,* 520 Pa. 583, 549 A.2d 916 (1988) (quoting *T.C.R. Realty*). An order is final, and not interlocutory, if it prevents a party from presenting the merits of its claim in the trial court. *Stevenson v. General Motors Corp.,* 513 Pa. 411, 416, 521 A.2d 413, 417 (1987); *T.C.R. Realty,* 472 Pa. at 337, 372 A.2d at 724. Sta–Rite asserts that the denial of its motion puts it out of court as to the defense of the Statute Of Repose, making the order a final appealable order. In *Posternack v. American Casualty v. American Casualty Company of Reading,* 421 Pa. 21, 218 A.2d 350 (1966), we held that an order denying leave to amend to include the defense of *res judicata* precluded proof at trial of what might be a complete defense, and effectively put the defendant out of court as to that defense. In *Schaffer,* the Superior Court considered this very issue and held that refusal to allow a defendant to amend his answer to include the defense of the statute of repose was a final appealable order. We thus agree with the Superior Court below that the denial of Sta–Rite's motion to amend its complaint is a final appealable order.

**2. RULE 341. FINAL ORDERS GENERALLY**

(a) **General Rule.** Except as prescribed in Subdivisions (b) [relating to appeals as right from the Commonwealth Court] and (c) [relating to criminal appeals] of this rule, an appeal may be taken as right from any final order of an administrative agency or of a lower court.

On July 6, 1992 Rule 341 was amended so as to define a final order as any order that "disposes of all claims or of all parties." Under this amended formulation of the rule, the order in the instant case would not be final as Sta–Right has not been put out of court as to all its defenses, but only as to the defense of the statute of repose. *See Robert H. McKinney Associates,* 429 Pa.Super. 440, 632 A.2d 937 (1993). However, the amended rule applies only to proceedings commenced after July 6, 1992. The instant proceeding was brought on September 8, 1988, and thus the pre–1992 Rule 341 and the cases defining it apply in this situation. *See id.*

We must now consider whether Sta–Rite should be allowed to amend its complaint to include the statute of repose as a matter of law. The rule in this Commonwealth is that amendments to pleadings should be liberally allowed. *Posternack*, 421 Pa. at 24, 218 A.2d at 351; *Tanner v. Allstate Ins. Co.*, 321 Pa.Super. 132, 467 A.2d 1164 (1983). However, amendment will not be allowed where the proposed amendment is against a positive rule of law. *Posternack*, 421 Pa. at 24, 218 A.2d at 351–52; *Grim v. Betz*, 372 Pa.Super. 614, 618, 539 A.2d 1365, 1367 (1988); *Tanner*, 321 Pa.Super. at 137, 467 A.2d at 1167. Allowance of an amendment that is against a positive rule of law would be futile and would "cause delay and waste the resources of the court and the opposing party in having to defend against the proposed amendment." *Tanner*, 321 Pa.Super. at 138–39, 467 A.2d at 1167. Thus, if Sta–Rite is entitled to the defense of the statute of repose the motion to amend should be granted. However, if Sta–Rite is not entitled to the defense, the amendment would be futile and the motion should be denied. We must, therefore, determine whether Sta–Rite may assert the statute of repose as a defense to the plaintiff's claim as a matter of law.

The Pennsylvania statute of repose is codified at 42 Pa. C.S.A. § 5536 and provides in pertinent part:

(a) General rule.... a civil action or proceeding brought against any person lawfully performing or furnishing the design, planning, supervision or observation of construction, or construction of any improvement to real property must be commenced within 12 years after the completion of construction of such improvement to recover damages for: (3) Injury to the person or for wrongful death arising out of any such deficiency ...

Section 5536 is a statute of repose, rather than a statute of limitation. *Schaffer v. Litton Systems*, 372 Pa.Super. at 127, 539 A.2d at 362 (quoting *Mitchell v. United Elevator Co., Inc.*, 290 Pa.Super. 476, 487, 434 A.2d 1243, 1248–49)). As a statute of repose, Section 5536 does not merely bar a party's right to a remedy as a statute of limitations does, but it completely abolishes and eliminates the cause of action. *Schmoyer by*

*Schmoyer v. Mexico Forge, Inc.,* 423 Pa.Super. 593, 596, 621 A.2d 692, 693 (1993) (quoting *Mitchell,* 290 Pa.Super. at 486, 434 A.2d at 1248).

■ A party moving for protection under the statute of repose must show: (1) what is supplied is an improvement to real property; (2) more than twelve years have elapsed between the completion of the improvements to the real estate and the injury; and (3) the activity of the moving party must be within the class which is protected by the statute. *McConnaughey,* 536 Pa. at 99, 637 A.2d at 1333; *Schmoyer,* 423 Pa.Super. at 596, 621 A.2d at 694. *See also Gnall v. Illinois Water Treatment Co.,* 640 F.Supp. 815, 817 (M.D.Pa.1986).

■ It is undisputed by the parties that twelve years have elapsed from the time the swimming blocks were installed and the Plaintiff's injuries. The twelve year period begins to run when the entire construction project is so completed that it can be used by the general public. *Fetterhoff v. Fetterhoff,* 354 Pa.Super. 438, 440–41, 512 A.2d 30, 31, *appeal denied,* 514 Pa. 624, 522 A.2d 50 (1986); *Catanzaro v. Wasco Products, Inc.,* 339 Pa.Super. 481, 488, 489 A.2d 262, 266 (1985). It is unclear from the record when the diving blocks manufactured by Sta–Rite were installed and used by the general public. The platforms were purchased in July of 1972. (R.R. at 83A). We assume that they were installed and used by the public within a reasonable time after their purchase. The Plaintiff was injured in May of 1987, fifteen years later. We thus will assume for the purposes of our analysis that the twelve year requirement has been satisfied.

In light of our recent decision in *McConnaughey,* we must address the issue of whether Sta–Rite is within the class which is protected by the statute.[3] In *McConnaughey,* a plurality of

**3.** The Concurring Opinion suggests that the Majority should not have discussed this prong of the test out of order. We chose to discuss this prong of the test out of order due to the recentness and importance of *McConnaughey* which was handed down only weeks before our consideration of this case. The Concurring Opinion also asserts that our discussion is dictum. We disagree as we believe that *McConnaughey,* which was pending during the argument of the instant case and was

this Court held that a manufacturer who does nothing more than supply a defective product which later is incorporated into an improvement to real property by others is not within the purview of the statute.[4] *McConnaughey*, 536 Pa. at 101, 637 A.2d at 1334. *McConnaughey* involved a manufacturer of metal plates incorporated into roof trusses who asserted the statute of repose as a defense when the plates allegedly cracked and caused the trusses to collapse. We found that the proper focus in interpreting the statute was the activity performed, i.e. whether the party claiming the protection of the statute was involved in the design, planning, supervision, construction or observation of the construction of an improve-

handed down during our consideration of it, is inextricably tied to the present controversy. The parties have consistently argued the principles underlying *McConnaughey* without benefit of that decision. Further, it was our original impulse to decide this case solely on the principles of *McConnaughey* prior to our complete understanding of the instant facts. Due to the similarity with *McConnaughey*, we believe that the bar would have been utterly confused if we had failed to address why the principles set forth in that opinion did not apply here. *McConnaughey* itself was a plurality opinion which left this area of the law unsettled. While the philosophy of the Concurring Opinion tends to promote judicial economy, we believe that our consideration of *McConnaughey*, in view of its recent vintage, is only fair to the parties. In addition, we believe that our decision in the instant case will provide the bar with a maximum of guidance on this question and resolves it in accord with a majority of courts and commentators. The approach of the concurrence would leave the issue unsettled and would wait for a third case to finally resolve an issue most courts have managed to resolve in one attempt. This we feel is unwise and would leave the lower courts and the bar in a state of unnecessary confusion. Also, footnote 1 of the Concurring Opinion suggests that this issue was not properly before this court. Our review finds that the parties consistently argued the principles underlying *McConnaughey* throughout these proceedings.

4. The Concurring Opinion implies that we did not make any such holding in *McConnaughey*. We agree that we did not decide whether the defendant, Building Components, was protected by the statute of repose. We also agree that we only decided that a genuine issue of material fact existed as to the extent of Building Component's involvement in the installation of roof trusses, and, therefore, that the case was not ripe for summary judgement. However, undeniably the underlying principle on which this decision was founded was our holding that manufacturers are not protected under the statute of repose. To suggest otherwise is simply an incorrect interpretation of *McConnaughey*.

ment to real property. *McConnaughey,* 536 Pa. at 101 n. 3, 637 A.2d at 1334 n. 3 (citing *McCormick v. Columbus Conveyer Co.,* 522 Pa. 520, 564 A.2d 907 (1989)). We concluded: "When a manufacturer does nothing more than supply the component products for an improvement to real property, the manufacturer is not protected by the statute." *McConnaughey,* 536 Pa. at 101, 637 A.2d at 1334.

■ Unlike in *McConnaughey,* Sta–Rite is not the manufacturer of a component part of an improvement. Instead, Sta–Rite asserts that the diving blocks are improvements in and of themselves. We believe that the principles articulated in *McConnaughey* are applicable in the instant case. There, we held, "[t]he Pennsylvania statute of repose was not intended to apply to manufacturers and suppliers of products, but only to the kinds of economic actors who perform acts of 'individual expertise' akin to those commonly thought to be performed by builders." *McConnaughey,* 536 Pa. at 101, 637 A.2d at 1334.

Indeed, the history of the statute suggests that it was passed through the efforts of the American Institute of Architects, the National Society of Professional Engineers, and the Association of General Contractors of America to protect these professions from suit long after improvements were completed. *See Luzadder v. Despatch Oven Co.,* 834 F.2d 355, 359 (3d Cir.1987), *cert. denied sub nom., Honeywell, Inc. v. Luzadder,* 485 U.S. 1035, 108 S.Ct. 1595, 99 L.Ed.2d 909 (1988); *Springman v. Wire Machinery Corp. of America,* 666 F.Supp. 66, 69 (M.D.Pa.1987). *See also The Variety, Policy and Constitutionality of Product Liability Statutes of Repose,* 30 Am. U.L.Rev. 579, 587 (1981); *Limitation of Action Statutes for Architects and Builders–Blueprints for Non–Action,* 18 Cath. U.L.Rev. 361, 365 (1969). We agree with the Third Circuit Court of Appeals which concluded in interpreting our law that manufacturers have been excluded from protection for good reason. "Application of § 5536 to manufacturers would cut the heart out of Pennsylvania product liability law by immunizing any manufacturing company fortunate enough to have its product turned into an improvement to real property. *Luzadder,* 834 F.2d at 359. *See also Vasquez v. Whitting Corp.,* 660

F.Supp. 685, 689 (E.D.Pa.1987) ("These policies [underlying § 402a of the Restatement (Second) of Torts] would be undermined if manufacturers were able to claim that the statute of repose relieves them of liability merely because their products have somehow become 'improvements to real property.' ") Thus, as a general rule, manufacturers are not included in the class protected by the statute.

■ However, the focus of the inquiry remains on the activity performed, particularly whether any "individual expertise" has been supplied. *See McConnaughey,* 536 Pa. at 101 & n. 3, 637 A.2d at 1334 & n. 3. Thus, we do not exclude manufacturers from the statute's protection as a matter of law. We find the instant case is one in which a manufacturer supplied "individual expertise" to the design of an improvement. · The record in this case demonstrates that the dimensions of this pool included an "unusual" deck to water dimension of 12 inches. (R.R. at 75A). The pool contractor, Paddock Pool Builders, ordered diving blocks from Sta–Rite and included drawings of the pool which related to the unusual deck to water height. (R.R. at 79A). Sta–Rite shipped the Diving Blocks with an invoice which read "per their drawing." (R.R. at 74a). We recognize that the block which was shipped was a standard stock item (R.R. at 80A). However, Sta–Rite was required to examine the drawings including the unusual deck to water height prior to shipping the diving blocks. Even if Sta–Rite did no more than examine the drawings and determine that its standard product was appropriate with modifications, as appears was the case in the instant situation, Sta–Rite expended "individual expertise" and was involved with the design of the alleged improvement. Thus, under the unique facts of this case, we conclude that Sta–Rite is within the class protected by the statute.[5]

**5.** We do not suggest that every manufacturer may bring itself within the · class protected by the statute by shipping its goods "per specifications" or "per your drawing." The unique facts of this case lead us to believe that Sta–Rite actually expended individual expertise in supplying its product. Without facts that indicate a manufacturer has actually supplied such expertise in the design or construction of an improve-

The concurrence misperceives the focus of our holding here today. It believes our holding is incorrect because this prong "focuses not on just the activity performed in the abstract, but on the activity performed *in relation to real property.*" Concurring Opinion at 3 (emphasis in the original). However, this is our argument precisely. The concurrence is apparently under the impression that our holding today rests on the belief that Sta–Rite expended "individual expertise" in the manufacturing of its product—the starting blocks themselves. Instead, our holding, properly interpreted, rests on the "contribution or acts done in relation to the improvement of real property." *McConnaughey,* 536 Pa. at 101 n. 3, 637 A.2d at 1334 n. 3. We today find that Sta–Rite expended "individual expertise" akin to that commonly thought to be performed by builders when it evaluated the unique dimensions of the pool and determined that its product was appropriate. Sta–Rite, we believe, did more than supply the starting blocks. Our reading of the record is that Sta–Rite had input into the design the pool when it reviewed the drawings of the pool and concluded that its starting blocks were appropriate to the pool's "unusual dimensions." Unlike the concurrence, we believe that when a manufacturer is asked for its "individual expertise" in evaluating whether its product is appropriate as part of a larger improvement to real property it is expending the type of expertise contemplated under the statute.

The final determination required under the statute is whether the diving blocks manufactured by Sta–Rite and attached to the swimming pool of co-defendant YMCA are improvements to real property. We have previously defined an improvement as:

> [a] valuable addition made to property (usually real estate) or an amelioration in its condition, amounting to more than mere repairs or replacement, costing labor or capital, and intended to enhance its value, beauty or utility or to adapt it for new or further purposes . . .

ment along with its product, a manufacturer is not within the class protected by the statute.

*McCormick,* 522 Pa. at 524, 564 A.2d at 909 (quoting Black's Law Dictionary).

For the purposes of the instant case, and to end the confusion found in the cases of the Superior Court as well as in the federal courts interpreting our law, we feel it necessary to expound upon this definition.

 An improvement includes everything that permanently enhances the value of real property. *See* 41 Am.Jur.2d *Improvements* § 1 (citing *Kentucky Farm & Cattle Co. v. Williams,* 140 F.Supp. 449 (D.Ky.1956); *Drennen & Co. v. Mercantile Trust & D. Co.,* 115 Ala. 592, 23 So. 164 (1896); *Watson Bros. Realty Co. v. Douglas County,* 149 Neb. 799, 32 N.W.2d 763 (1948); *Williamson v. Jones,* 43 W.Va. 562, 27 S.E. 411 (1894). Commonly, improvements include: erection of a building; replacing old buildings with new ones; substantial repairs to a building necessary to preserve a building; the making of substantial additions to or changes in existing buildings; construction of sidewalks; erection of fences; and the preparation of land for building sites. *See* 41 Am.Jur.2d *Improvements* § 1.

 It appears that for the purposes of § 5536 the most problematic area is where chattel or personalty is attached to real property. *See, e.g., Radvan v. General Elec. Co.,* 394 Pa.Super. 501, 576 A.2d 396 (1990), *appeal denied,* 527 Pa. 602, 589 A.2d 692 (1991) (welding machine attached to factory); *Schmoyer,* 423 Pa.Super. at 593, 621 A.2d at 692 (Spin Around ride attached to a playground); *Catanzaro,* 339 Pa.Super. at 481, 489 A.2d at 262 (skydome attached to a school). This is the situation in the instant case and requires us to delve into the law of fixtures. A fixture is by definition an improvement to real property. *Catanzaro,* 339 Pa.Super. at 485, 489 A.2d at 262; *Keeler v. Com. Dept. of Transp.,* 56 Pa.Commw. 236, 239, 424 A.2d 614, 616 (1981). *See also* 41 Am.Jur.2d *Improvements* § 1. The general test used in determining when an article of personalty is a fixture has three components: (1) the relative permanence of attachment to realty; (2) the extent to which the chattel is necessary or

essential to the use of the realty; and (3) the intention of the parties to make a permanent addition to the realty. *See Gore v. Bethlehem Area Sch. Dist.,* 113 Pa.Commw. 394, 537 A.2d 913 (1988), *appeal denied,* 519 Pa. 656, 546 A.2d 60 (1989); *See also* 35 Am.Jur.2d *Fixtures* § 4.

The Superior Court considered the law of fixtures as set forth in *Canon–McMillan Sch. Dist. v. Bioni,* 127 Pa.Commw. 317, 561 A.2d 853 (1989), and concluded, "[W]e must know what the YMCA intended at the time the blocks were installed." *Noll v. Paddock Pool Builders,* 416 Pa.Super. 284, 298, 611 A.2d 219, 226 (1991). The Superior Court then remanded the case to the trial court for a factual determination of the YMCA's intent. We agree with the Superior Court that the intent of the parties is an important consideration in determining whether an object is a fixture. However, to the extent that the Superior Court's opinion suggests that it is the subjective intent of the YMCA at the time the diving blocks were installed that controls whether they are an improvement, we disagree. We agree with the Plaintiff that his rights under § 5536 against Sta–Rite should not depend on the subjective intent of the YMCA fifteen years earlier. Courts especially look to the objective intent of the parties when determining whether an object is a fixture when, as here, the rights of third parties are affected by that determination. *See Royal Store Fixture Co. v. Patten,* 183 Pa.Super. 249, 255–56, 130 A.2d 271, 274 (1957); 35 Am.Jur.2d *Fixtures* § 15. We find this objective approach particularly appropriate here where the YMCA is a co-defendant in the instant action. We are in accord with the suggestion of Judge Popovich in his dissent that the Majority of the Superior Court invites the YMCA to simply respond that its intention at the time the diving blocks were put in place was to have it become a permanent improvement to circumvent accountability. *See Noll,* 416 Pa.Super. at 299, 611 A.2d at 226 (Popovich, J., dissenting).

We believe that the objective intention of the parties is the type of intent that should be considered in determining whether an object has become a fixture for the purposes of

§ 5536 [6] *See* 35 Am.Jur.2d *Fixtures* § 15. The actual state of mind of the parties at the time of the object's installation is of little consequence for the purposes of § 5536. *See Id.* Instead, we look to the objective intent of the parties to permanently incorporate a chattel into real property as evidenced by the proven facts and surrounding circumstances entered into evidence. *See Nelse Mortensen & Co. v. Treadwell,* 217 F.2d 325 (9th Cir.1954); *Wedge v. Butler,* 136 Me. 189, 6 A.2d 46 (1939); *Bastas v. McCurdy,* 266 S.W.2d 49 (Mo.App.1954). As one commentor has concluded, "it is not so much what a particular party intended his legal rights to be, as it is what intended use of the property was manifested by the conduct of the parties." B. Clothier, *The Law of Fixtures in Pennsylvania,* 32 Pa.B.Q. 66, 66–67 (1960–61) *cited in Canon–McMillan,* 127 Pa.Commw. at 321, 561 A.2d at 854.

Thus, we conclude that a court must make an objective determination of whether an object is a fixture for the purposes of § 5536. The considerations in making such a determination may include: the degree to which and manner in which the object is attached to real property, see *Canon–McMillan,* 127 Pa.Commw. at 317, 561 A.2d at 855; *Gore,* 113 Pa.Commw. at 394, 537 A.2d at 915; *McCarthy v. Bank,* 283 Pa.Super. 328, 332, 423 A.2d 1280, 1282 (1980); 35 Am.Jur.2d *Fixtures* § 6, the ease of removing the object, see *Royal Store,* 183 Pa.Super. at 253–54, 130 A.2d at 273–74 (1957); 35 Am.Jur.2d *Fixtures* § 7, whether the object may be removed without damaging the real property, see *Kaczmarek v. Mesta Mach. Co.,* 324 F.Supp. 298 (W.D.Pa.1971); *In re Hess,* 61

6. We specifically decline to comment on the type of intent required outside of the context of Section 5536. In the absence of any definition of "improvement" by our legislature, we today attempt to reconcile the age-old tenants of property law with the purposes of Section 5536. We find that an objective determination of intent works best for determining whether an object is a fixture for the purposes of the statute of repose. The more traditional context for the law of fixtures is the tenant-landlord or grantee-grantor context. In this situation the tenant or grantee attaches a betterment to the real property. The question then becomes whether this betterment is a fixture that should pass to the landlord or grantor upon transfer of the land. A more subjective analysis may be required in this context, but this is a question for another day.

B.R. 247 (W.D.Pa.1986); *Brandt v. Koppelman,* 169 Pa.Super. 236, 239, 82 A.2d 666, 667 (1951), how long the object has been attached to the real property, see *Schmoyer,* 423 Pa.Super. at 593, 621 A.2d at 694 (children's ride permanently attached for more than 17 years); *Radvan v. General Elec. Co.,* 394 Pa.Super. 549, 576 A.2d at 397 (welding machine attached and never moved for thirty years), whether the object is necessary or essential to the real property, see *Gore,* 113 Pa.Commw. at 394, 537 A.2d at 913; 35 Am.Jur.2d *Fixtures* § 12, and the conduct of the party and whether it evidences an intent to permanently attach the object to the reality, see *Canon–McMillan,* 127 Pa.Commw. at 321, 561 A.2d at 854–55; *Clothier,* supra.

In the instant case the trial judge made such an objective review of the diving platforms and concluded that they were not an improvement to real property because they were "removable and attached to the pool by bolts." *Noll v. Paddock Pool Builders, Inc.,* No. 4719 S1987, slip op. at 4 (Court of Common Pleas, Dauphin County. Aug. 20, 1991). The decision to permit or refuse amendment to the pleadings is a matter committed to the discretion of the trial court. *Posternack,* 421 Pa. at 24, 218 A.2d at 351; *General Machine Corp. v. Feldman,* 352 Pa.Super. 180, 185, 507 A.2d 831, 834; *Tanner,* 321 Pa.Super at 136, 467 A.2d at 164. Upon review of the record, we cannot conclude that the trial judge abused his discretion in finding the diving platforms were not improvements and thus denying Sta–Rite's motion to amend. The record shows that the diving platforms were not permanently attached to the pool. *See* R.R. at 86A–88A, 90A–92A. The diving platforms were attached to the pool by two "T-handles" that could be unscrewed without the use of any tools. R.R. at 86A. Removing the diving platforms did not require any special skill and was often done by parents and coaches conducting swimming meets. R.R. at 88A, 92A. The platforms were, in fact, moved for swimming meets and cleaning on frequent occasions. R.R. at 91A–92A. In fact, the starting blocks were advertised by Sta–Rite as easily removable. R.R. at 61A. Thus, the record supports the finding that the degree

and manner of attachment were such that the blocks were not made a permanent improvement. The diving blocks were easily removable and removal would not cause the pool any damage. The blocks were not necessary or essential to the use of the property as a swimming pool as the pool could be used and enjoyed aside from competitive meets. The conduct of the YMCA evidences that they did not intend for the blocks to be a permanent addition to the pool as YMCA employees detached and removed the blocks and allowed parents and swim team coaches to detach and remove the blocks.

We thus find that the trial judge did not abuse his discretion in refusing Sta–Rite's Motion to Amend its Answer and New Matter. We reverse the order of the Superior Court and reinstate the order of the Court of Common Pleas of Dauphin County.

CAPPY, J., concurs.

Mr. Justice FRANK J. MONTEMURO is sitting by designation as Senior Justice pursuant to Judicial Assignment Docket No. 94 R1800, due to the unavailability of Mr. Justice ROLF LARSEN, see No. 127 Judicial Administration Docket No. 1, filed October 28, 1993.

CAPPY, Justice, concurring.

I concur in the Majority's conclusion that the trial court did not abuse its discretion in denying Sta–Rite's Motion to Amend its Answer and New Matter to plead the statute of repose found at 42 Pa.C.S. § 5536. More specifically, I agree that Sta–Rite is not entitled to assert the statute of repose because the starting blocks it manufactured are not improvements to real property.

I write separately for two distinct reasons. First, given its disposition of the improvement issue, I do not believe that the Majority should have discussed the remaining two requirements for protection under the statute of repose. As the Majority correctly states,

A party moving for protection under the statute of repose must show: (1) what is supplied is an improvement to real property; (2) more than twelve years have elapsed between the completion of the improvements to the real estate and the injury; and (3) the activity of the moving party must be within the class which is protected by the statute.

(Majority Opinion at p. 281 (citations omitted).) The moving party must satisfy all three prongs of this test. Therefore, the Majority's conclusion that the starting blocks are not improvements to real property—*i.e.*, that Sta–Rite does not satisfy the first prong of the test—should have ended the inquiry.[1] The remainder of the Majority's discussion thus is not necessary to the result and must be viewed as *dicta.* Had the three prongs been addressed in the stated order—rather than out of order, as the Majority has chosen to address them—the superfluity of the discussion of prongs two and three would have been obvious.

Second, I respectfully disagree with the substance of the Majority's analysis with respect to the third prong: whether the activity of Sta–Rite is within the class protected by the statute. The Majority's insistence on addressing this prong, despite its finding that the product supplied is not an improvement, has caused it to distort the analysis of the "activity" prong by taking that prong out of context. As a result, the Majority's attempt to clarify the Court's recent pronouncements in *McConnaughey v. Building Components, Inc.*, 536 Pa. 95, 637 A.2d 1331 (1994), only serves to obfuscate the issue.

In *McConnaughey,* the Court explained that

the statute only protects the acts of those persons *involved* in the *design, planning, supervision, construction or observation of the construction of an improvement to real property itself.* When a manufacturer does nothing more than

---

1. Recognizing that a negative answer to this threshold question disposed of the matter, the trial court addressed only the first prong of the test. On appeal, the Superior Court also addressed only the first prong. Thus, it is questionable whether the remaining prongs of the test are issues that are even properly before this Court on appeal.

> supply the component products for an improvement to real property, the manufacturer is not protected by the statute. The fact that a manufacturer designs and plans the component products which later are incorporated into an improvement to real property is irrelevant under the statute. The Pennsylvania statute of repose was not intended to apply to manufacturers and suppliers of products, but only to the kinds of economic actors who perform acts of "individual expertise" akin to those commonly thought to be performed by builders.

*Id.* at 101, 637 A.2d at 1334 (Opinion Announcing the Judgment of the Court) (emphasis in original).[2] Quoting an earlier case of this Court, the Court stated that the focus of the statute is on *"the contribution or acts done in relation to the improvement to the real property." McConnaughey, supra, id.* at 101 n. 3, 637 A.2d at 1334 n. 3 (quoting *McCormick v. Columbus Conveyor Co.,* 522 Pa. 520, 524, 564 A.2d 907, 910 (1989) (quoting *Leach v. Philadelphia Savings Fund Society,* 234 Pa.Super. 486, 340 A.2d 491 (1975)) (emphasis supplied in *McConnaughey*)).

Thus, the final prong focuses not just on the "activity," performed in the abstract, but on the activity performed *in relation to the real property.* To provide an admittedly extreme illustration of my point: while a dressmaker, for example, might be said to perform an act of "individual expertise" in designing and constructing a garment, it would be ridiculous to engage in a discussion of whether his or her activities fall within the class protected by the statute of repose. The dressmaker's acts simply are not performed "in relation to an improvement to real property." By addressing whether Sta–Rite provided "individual expertise" in supplying

2. The Majority implies that, in *McConnaughey,* this Court held that the Appellee was "the manufacturer of a component part of an improvement" and therefore not entitled to the protection of the statute of repose. (Majority Opinion at p. 283.) However, the Court in *McConnaughey* did *not* decide the ultimate question of whether Appellee Building Components, Inc. was protected by the statute of repose. Rather, the Court held that a genuine issue of material fact existed as to the extent of the Appellee's involvement in the installation of the roof trusses, and therefore that the case was not ripe for summary judgment.

an item that it determines is *not* an improvement to real property, the Majority sets up a contrived discussion that it then must qualify by limiting its application to the "unique facts of this case." (Majority Opinion at p. 284 n. 5.) The Majority first pretends for the sake of discussion that the starting blocks are an "improvement," referring to them as "the alleged improvement." (*Id.* at p. 284.) However, the most that the Majority can conclude following this discussion is that "Sta–Rite actually expended individual expertise *in supplying its product.*" (*Id.* at p. 284 n. 5; emphasis added.) No relationship between the activity performed and an improvement to real property is established.

Furthermore, the Majority's discussion applies only one-half of the definition of the protected activity that was set forth in *McConnaughey.* While the Majority focuses on whether Sta–Rite expended "individual expertise," what *McConnaughey* actually requires is that the acts performed be "acts of 'individual expertise' akin to those commonly thought to be performed *by builders.*" *McConnaughey,* 536 Pa. at 101, 637 A.2d at 1334 (emphasis added). *McConnaughey* further states that "the operative question ... is whether [the moving party] 'furnished construction' or merely 'furnished supplies' to be used in construction." *Id.* at 101, 637 A.2d at 1334.

These statements are founded upon the very basis for the statute of repose. As this Court has explained, the statute draws a rational distinction between suppliers and builders:

Suppliers, who typically produce items by the thousands, can easily maintain high quality-control standards in the controlled environment of the factory. A builder, on the other hand, can pre-test his designs and construction only in limited ways—actual use in the years following construction is their only real test. Further, every building is unique and far more complex than any of its component parts. Even in the most uniform-looking suburban subdivision, each house stands on a separate plot of land; each lot may have slightly different soil conditions; one may be near an underground stream; and so forth. The Legislature can rationally conclude that the conditions under which builders

work are sufficiently difficult that limitations should be placed on their liabilities, but not on the liabilities of suppliers.

*Freezer Storage, Inc. v. Armstrong Cork Co.*, 476 Pa. 270, 274, 382 A.2d 715, 719 (1978) (upholding constitutionality of statute of repose).

Under the facts presented here, Sta–Rite merely *supplied a product, albeit* one within its "individual expertise." It did not provide the type of activity "commonly thought to be performed by builders." If we were to permit every manufacturer who, in performing its work, was required to meet specifications or to employ its "expertise," we would be expanding the protection of the statute of repose far beyond its acknowledged limits. I simply do not believe that this was the Court's intention in *McConnaughey*.[3]

The Majority appears to believe that its discussion does limit the reach of the statute, for in footnote 5 it states: "We do not suggest that every manufacturer may bring itself within the class protected by the statute by shipping its goods 'per specifications' or 'per your drawing,'" and refers to the "unique facts of this case" as justification for extending the statute here. However, the Majority has identified nothing at all "unique" about the manufacturer's activity in this case. What was unique in this case was the *pool*; all the manufacturer did was ship a standard item "per [Paddock Pool Builders'] drawing." (*See* Majority Opinion at p. 284.)

---

**3.** The case *sub judice* contrasts markedly with *McCormick v. Columbus Conveyor Company*, 522 Pa. 520, 564 A.2d 907 (1989), wherein the Court held that the statute protected the manufacturer of a coal delivery system. In *McCormick*, this Court (*after* finding that the coal delivery system was an improvement to real property) specifically found that the manufacturer

> *did more than supply a standard piece of equipment*, indistinguishable from any other that it mass-produced, that by chance became affixed to the University's property. Using specifications and a general layout provided by Rust Engineering, Columbus *devised a coal delivery system to be integrated into the construction of the new power plant that was uniquely suited to that site.*

*Id.* at 524, 564 A.2d at 910 (emphasis added).

The Majority's discussion of the activity prong is unnecessary and, I believe, erroneous. I would reach the same result as the Majority by focusing solely on Sta–Rite's inability to fulfill the first prong of the test ("what is supplied is an improvement to real property").