## Mishler v. Herco Inc.

C.P. of Dauphin County, no. 2377 S 1994 and 3246 S 1994.

*Arthur S. Novello,* for plaintiffs.
*Lee C. Swartz,* for plaintiffs Mishler.
*Michael R. Kelley* and *Harvey Freedenberg,* for defendant Herco.
*Sandra Hourahan* and *William Ricci,* for additional defendants Montwood and Arrow Inc.

 LIPSITT, KLEINFELTER AND LEWIS, *JJ.,*

KLEINFELTER, *J.,* December, 28, 1995—The present matter comes before the court as a motion for summary judgment by defendants and additional defendants Arrow Development Company Inc. and Arrow Dynamics Inc. The motions arise from separate personal injury actions filed by plaintiffs Marianne and Mark Cedrone (3246 S 1994) and Shirley A. and Donald G. Mishler (2377 S 1994). The cases are consolidated for the present issue because movants Arrow Development and Arrow Dynamics manufactured the amusement ride upon which Marianne Cedrone and Shirley A. Mishler were passengers when they sustained the injuries complained of. The ride, the "coal cracker" log flume, is owned by defendant Herco Inc. The alleged injuries occurred within six weeks of each other. Mishler claims that she was injured on July 18, 1992 while Cedrone avers that her injuries took place on August 24, 1992.

The Mishlers brought their action against defendant Herco by writ of summons on June 21, 1994. They filed a complaint on August 8, 1994 and an amended complaint on September 12, 1994. On October 26, 1994

Herco named Arrow Development and Arrow Dynamics as additional defendants. In the answer and new matter filed on March 29, 1995 Arrow Development averred that it changed its name to Montwood Corporation on January 15, 1981. The company has responded to all subsequent pleadings under that name. Hereinafter in this memorandum this defendant will be referred to as Arrow Development/Montwood.

The Cedrones filed their action against Herco, Arrow Development/Montwood, and Arrow Dynamics by complaint on August 18, 1994. Arrow Development/ Montwood and Arrow Dynamics responded with answer and new matter on March 29, 1995, the same date that they filed a like pleading in response to the Mishlers. Subsequently, in late April 1995, Arrow Development/Montwood and Arrow Dynamics filed motions for summary judgment against the Mishlers, Cedrones, and Herco. The motion was argued before an en banc court in July and constitutes the present matter.

The court will grant summary judgment "when the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show . . . that the moving party is entitled to a judgment as a matter of law." *McConnaughey v. Building Components Inc.,* 536 Pa. 95, 98, 637 A.2d 1331, 1333 (1994), citing 42 Pa.R.C.P. 1035(b). Our review will be conducted in "the light most favorable to the non-moving party." Accordingly, if doubts arise as to "the existence of a genuine issue of material fact," we must rule against the moving party. *Id.* at 98, 637 A.2d at 1333. In this case we find that the motions of both Arrow Development/Montwood and Arrow Dynamics should be granted.

First, the issue of granting Arrow Dynamics' motion appears to be rendered moot by the stipulation of Herco

and the Cedrones.[1] The movants state that Arrow Dynamics was not formed until January 15, 1981 and therefore did not participate in any transactions involving the flume owned by Herco. Based on this assertion, Herco and the Cedrones agree that summary judgment should be granted to Arrow Dynamics. We therefore dismiss the actions against Arrow Dynamics.

Arrow Development/Montwood next contends that its motion should be granted because the actions against it are barred by the statute of repose, 42 Pa.C.S. §5536.[2] Under this statute a defendant may be protected from any action if the defendant can show that "(1) what is supplied is an improvement to real property; (2) more than 12 years have elapsed between the completion of the improvements to the real estate and the injury; and (3) the activity of the moving party . . . (is) within the class which is protected by the statute." *Noll by Noll v. Harrisburg Area YMCA,* 537 Pa. 274, 280, 643 A.2d 81, 84 (1994), citing *McConnaughey, supra* at 99, 637 A.2d at 1333. Arrow Development/Montwood avers that its last modifications to the flume took place in 1978 so that 16 years had passed before plaintiffs filed their actions. The flume, as Arrow Development/ Montwood points out, by being permanently affixed to the land and by its very nature as an amusement ride, must be considered an improvement to real property. Finally, Arrow Development/Montwood maintains

---

1. The Mishlers did not file a response to the motions for summary judgment.

2. Construction projects.

"(a) General rule.—Except as provided in subsection (b), a civil action or proceeding brought against any person lawfully performing or furnishing the design, planning, supervision or observation of construction, or construction of any improvement to real property must be commenced within 12 years after completion of construction of such improvement to recover damages . . . ." 42 Pa.C.S. §5536.

that its "activity" in regard to the flume is "within the class protected by the statute."

Herco and the Cedrones do not dispute the issue of whether the flume was an improvement to the property. On the other hand, they maintain that Arrow Development/Montwood is not entitled to the statutory shield because the defendant was merely the manufacturer of the product. Herco and the Cedrones contend that "[w]hen a manufacturer does nothing more than supply the component products for an improvement to real property, the manufacturer is not protected by the statute." *McConnaughey, supra* at 100-101, 637 A.2d at 1334. They point out that a manufacturer is not in the protected class unless it participates in the *"design, planning, supervision, construction or observation of the construction of an improvement to real property itself."* *Id.* at 99, 637 A.2d at 1334. (emphasis in original) Herco then cites the contract between it and Arrow Development/Montwood to show that Herco was responsible for the construction of the flume. According to Herco, under the provisions of the contract, Arrow Development/Montwood was to "design and manufacture *a product* for installation by others." Herco further argues that Arrow Development/Montwood is "premature" in averring that more than 12 years have elapsed since Arrow Development/Montwood made any modifications to the ride. Herco claims that it "has had no opportunity to conduct any discovery to either confirm or deny that Arrow Development (now Montwood)" had worked on the flume within the 12 years prior to the commencement of the plaintiffs' actions. Thus, the Cedrones and Herco contend that the motion should be denied.

We disagree with the argument that Arrow Development/Montwood's "activity" in the construction of the flume does not entitle it to protection under the statute. We find that while the terms of the contract

between Herco and Arrow Development/Montwood indicate that Herco had primary responsibility in the construction of the flume, the contract provided for the involvement of Arrow Development/Montwood in the "design, planning, . . . (and) observation of the construction." *Id.* at 100, 637 A.2d at 1334. Arrow Development/Montwood's actual participation in these activities is indicated by the sworn affidavit of Ronald V. Toomer, a manager of engineering for Arrow Development/Montwood at the time when the flume was installed at Hersheypark. Toomer states that he "was personally involved in the engineering and design of Hersheypark's flume and its modifications." Toomer further avers that "[t]he subject flume and its modifications were custom designed to both the topography and space available at Hersheypark." (Arrow Development/Montwood's exhibit F, Toomer affidavit, paragraphs 8, 10.) Thus, the evidence shows that Arrow Development "perform[ed] acts of 'individual expertise' akin to those commonly thought to be performed by builders" with respect to the flume. *McConnaughey, supra* at 101, 637 A.2d at 1334.

In *McConnaughey* our Supreme Court applied the following distinction between "suppliers" and "builders" to determine which persons may be protected under section 5536 of the statute of repose:

"[S]uppliers who typically produce items by the thousands can easily maintain high quality control standards in the controlled environment of the factory. A builder, on the other hand, can protect his design and construction only in limited ways—actual use in the years following construction is their only real test. Further, every building is unique and far more complex than any of its component parts. Even in the most uniform-looking suburban subdivision, each house stands on a separate

plot of land; each lot may have slightly different soil conditions; one may be near an underground stream; and so forth. The legislature can rationally conclude that the conditions under which builders work are sufficiently difficult that limitations should be placed on the[ir] liabilities . . . ." *Id.* at 101-102, 637 A.2d at 1334-35, quoting *Freezer Storage Inc. v. Armstrong Cork Co.,* 476 Pa. 270, 274, 382 A.2d 715, 719 (1978).

According to the court, the "operative question" then becomes whether a party " 'furnished construction' or merely 'furnished supplies' to be used in construction." *McConnaughey, supra* at 102, 637 A.2d at 1335.

In *Noll, supra,* our Supreme Court came to a similar conclusion. In looking back to the *McConnaughey* case, which was resolved approximately three months earlier, the *Noll* court determined that "the focus of the inquiry" regarding protection under the statute of repose "remains on the activity performed, particularly whether any 'individual expertise' has been exercised." *Noll, supra* at 284, 643 A.2d at 86, quoting *McConnaughey, supra* at 101 & n.3, 637 A.2d at 1334 & n.3. The *Noll* court then held that manufacturers cannot be excluded "from the statute's protection as a matter of law." If the manufacturer is shown to have supplied a product that is "appropriate" for a particular construction project, the manufacturer will be found to have utilized "individual expertise" in the design of the project or "improvement" to the property. *Id.* at 284, 643 A.2d at 86. In *Noll* the court determined that the defendant manufacturer had used its expertise when it provided diving blocks for a designated location on the side of a particular swimming pool.

In this case Arrow Development/Montwood appears to have used its individual expertise in the construction of the flume. While the contract indicates that Herco

had primary responsibility for the construction of the amusement ride, the terms state that Arrow Development/Montwood was to "manufacture said equipment in accordance" with particular "plans and specifications" in the agreement. (Arrow Development/Montwood's exhibit F, agreement, paragraph 3(c).) These "plans" appear to include furnishing "calculated loads for design of major foundation and structural supports." The terms also call for the "technical assistance" of Arrow Development/Montwood "in establishment of a sequence of erection, proper methods of site assembly and . . . to assure that the equipment is installed in accordance with the plans and specifications." (Arrow Development/Montwood's exhibit F, specifications, "Scope of Work—Design and Manufacture," paragraphs (1)e. and j.) Arrow Development/Montwood's participation in the construction of the project is also shown by a "change order" contract wherein the defendant agreed to fabricate "columns, incidental bracing and miscellaneous iron work required to provide support" for the flume. (Arrow Development/Montwood's exhibit F.) This evidence along with the affidavit of Ronald V. Toomer, as discussed above, show that Arrow Development/Montwood was involved in the planning and design of the flume while it was being constructed. Therefore, we find that the defendant is a member of the class protected by the statute.

In addition, the nonmoving parties have not persuaded us that further discovery must be conducted to determine the last date of Arrow Development/Montwood's involvement in the flume. As Arrow Development/Montwood points out, the Cedrones initiated their action against it in August 1994. Thus, nearly a year had passed when the present motions were argued before an en banc court in July. Yet the nonmoving parties did not

provide any evidence to demonstrate that Arrow Development/Montwood had worked on the flume within the 12 years prior to the initiation of the suit. On the other hand, Arrow Development/Montwood, through Toomer's affidavit, indicates that the last time that it worked on the flume was in 1978. Therefore, we find that no genuine issue of material fact exists regarding the question of whether more than 12 years had elapsed since Arrow Development/Montwood worked on the ride and the present actions were filed. Arrow Development/Montwood has shown that it is entitled to the protection of the statute of repose, and its motion for summary judgment will be granted.

Accordingly, we enter the following

## ORDER

And now December 28, 1995, the motions for summary judgment of defendants and additional defendants Arrow Development (now Montwood Corporation) and Arrow Dynamics Inc. are granted. The actions against the aforenamed parties are dismissed.