J-A20034-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| LORI ERB | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| DAVID ERB | |
| Appellant | No. 3397 EDA 2014 |

Appeal from the Order Entered November 7, 2014
In the Court of Common Pleas of Bucks County
Domestic Relations at No.: A6-06-62964-D

BEFORE:  DONOHUE, J., SHOGAN, J., and WECHT, J.

MEMORANDUM BY WECHT, J.:                    **FILED AUGUST 26, 2015**

David Erb ("Husband") appeals the November 7, 2014 order in which the trial court found that he had violated the parties' property settlement agreement ("PSA") and ordered him to pay damages and counsel fees to Lori Erb ("Wife").  We affirm.

The trial court summarized the factual and procedural history of the case as follows:

> [T]he parties were married on September 16, 1995, separated on August 27, 2006, and Wife filed for divorce on September 6, 2006.  A Master's conference was held on August 16, 2010, and the Master issued her Report on September 2, 2010.  Both parties filed a Motion for a Hearing *De Novo* on or around September 16, 2010, and after a series of hearings held over three days, [the trial court] entered a Decree and Order with an accompanying Memorandum Opinion on September 26, 2012, granting the parties' divorce, equitably distributing their assets, and denying Wife's petitions for alimony and counsel fees.

On October 24, 2012, Husband filed a Notice of Appeal to the Superior Court of Pennsylvania from [the] September 26, 2012 Equitable Distribution Order. Husband apparently wished to retain the marital home rather than relinquish it to Wife in accordance with that order. On November 26, 2012, pursuant to [the] Order of November 5, 2012, Husband filed a Statement of Matters Complained of on Appeal. In response, [the trial court] filed a Supplemental Opinion on December 19, 2012, but the appeal was subsequently withdrawn by Husband, and discontinued by order of the Superior Court of Pennsylvania on May 30, 2013.

While that matter was on appeal, Husband and Wife, through their counsel, reached an apparent resolution to their dispute in the form of an undated property settlement agreement . . . which was filed with the [trial court] on October 4, 2013. The [PSA] was then incorporated into the parties' Divorce Decree by a Court Order entered on March 7, 2014. Under their [PSA], Wife still retained the marital home and Husband received the commercial property. The [PSA] also contained provisions for the award of various home items to each of the parties. In accordance with the [PSA], Husband, who had been living in the marital home, moved out in July of 2013, and Wife moved in approximately one week later, on August 1, 2013.

On September 23, 2013, prior to the actual filing of the [PSA] with the [trial court], Wife filed a Petition for Contempt, alleging that Husband had violated the [PSA] either by removing items from the home that he was not entitled to, or damaging other items left at the property. As a result, three days of hearings were conducted, after which [the trial court] found Husband in violation of the [PSA] and on November 7, 2014, entered [an] Opinion and Order.[1]

As explained in that Opinion, [the trial court] found Husband had violated the [PSA] by removing or damaging items that [the trial court] considered to be fixtures of the marital residence, and

_____

[1] Wife styled her petition as a petition for contempt, but she also sought enforcement of the PSA. The trial court made no finding of contempt, although it determined that Husband was in violation of the PSA and enforced the agreement. Therefore, we treat the underlying action as one for enforcement of an agreement.

[the trial court] accordingly ordered Husband to reimburse Wife for those items. Specifically, [the trial court] found that Husband impermissibly removed a landscaped stone fire pit, pond fountain/aerator, pole barn propane heater and tank, central vacuum system equipment, and window treatments. In addition, [the trial court] awarded Wife reimbursement for necessary plumbing repairs and replacement of the HVAC system and swimming pool heater and chlorinator, and [the trial court] awarded Wife counsel fees of $3,500. As a result, Husband was directed to pay Wife a total of $34,546.05. [The trial court] did not award Wife her requested reimbursement for windows she replaced in the residence or for any outdoor furnishings and furniture that had not been specifically identified in the [PSA].

On December 4, 2014, Husband filed the Notice of Appeal to the Superior Court of Pennsylvania from [the] Order of November 7, 2014.

On December 8, 2014, [the trial court] ordered Husband to file a statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b).

Trial Court Opinion ("T.C.O."), 2/5/2015, at 1-3. Husband timely filed a Rule 1925(b) statement on December 26, 2014. The trial court then filed a Rule 1925(a) opinion.

Husband raises four issues before this Court:

1. Did the trial judge abuse her discretion and err by awarding [Wife] damages for the replacement of the Central Vacuum System, the HVAC System, and the Swimming Pool Heater/Chlorinator?

2. Did the trial judge abuse her discretion and err by awarding [Wife] damages for items that, under the terms of the [PSA] between the parties could have been removed by [Husband]?

3. Did the trial judge abuse her discretion and err by awarding [Wife] counsel fees when [Husband] did not violate the terms of the [PSA] between the parties?

- 3 -

> 4. Did the trial judge have such bias against [Husband] that the decision of the lower court should be reversed and remanded for a new hearing with another Judge?

Husband's Brief at 4 (issues reordered for ease of discussion).

The first two issues deal with the trial court's enforcement of the PSA.

We discuss them together.

> When interpreting a marital settlement agreement, the trial court is the sole determiner of facts and absent an abuse of discretion, we will not usurp the trial court's fact-finding function. On appeal from an order interpreting a marital settlement agreement, we must decide whether the trial court committed an error of law or abused its discretion.
>
> "[J]udicial discretion" requires action in conformity with law on facts and circumstances before the trial court after hearing and due consideration. Such discretion is not absolute, but must constitute the exercises of sound discretion. This is especially so where, as here, there is law to apply. On appeal, a trial court's decision will generally not be reversed unless there appears to have been an abuse of discretion or a fundamental error in applying correct principles of law. An "abuse of discretion" or failure to exercise sound discretion is not merely an error of judgment. But if, in reaching a conclusion, law is overridden or misapplied, or the judgment exercised is manifestly unreasonable or lacking in reason, discretion must be held to have been abused.
>
> Because contract interpretation is a question of law, this Court is not bound by the trial court's interpretation. Our standard of review over questions of law is *de novo* and to the extent necessary, the scope of our review is plenary as [the appellate] court may review the entire record in making its decision. However, we are bound by the trial court's credibility determinations.

***Stamerro v. Stamerro***, 889 A.2d 1251, 1257-58 (Pa. Super. 2005)

(citations and quotation marks omitted).

Husband argues that the weight of the evidence did not support the trial court's findings that the HVAC system, the central vacuum system, and the pool chlorinator were damaged and needed to be replaced. Husband contends that only Wife's testimony supported this finding and that Wife offered no evidence from the repair contractors to corroborate her testimony. Husband maintains that Wife has manufactured these claims to get Husband to pay for upgrades to the marital residence. Husband contends that the fire pit and the pond aerator were not listed as property that Wife was to retain pursuant to the PSA. Husband argues that, because those items were not listed, he could not have violated the PSA by taking them. Husband's Brief at 9-15, 17-19.

The trial court explicitly found Wife's testimony to be credible. Opinion and Order ("Order"), 11/7/2014, at 1. The trial court found that many of the items removed by Husband were not included in the list in the PSA, but that they, specifically the fire pit, pond fountain/aerator, and central vacuum system,[2] were fixtures that were not to be removed from the property. *Id.* at 2-3. The trial court also found that Wife was to receive the property in the same condition as when she left the marital residence, except for normal wear and tear. The court determined that Husband did not do so and

---

[2]    Other items, such as the fireplace screen and the heater from a barn, have not been contested by Husband in this appeal.

therefore, had to reimburse Wife for damages to the HVAC system and the pool chlorinator.[3] *Id.* at 7-9.

We have identified the categories of personal property connected to real property as follows:

> Chattels used in connection with real estate can fall into one of three categories. First, chattels that are not physically attached to realty are always personalty. Second, chattels which are annexed to realty in such a manner that they cannot be removed without materially damaging either the realty or the chattels are always fixtures. The third category consists of those chattels that are physically connected to the real estate but can be removed without material injury to either the land or the chattels. When a chattel falls into the third category, its status as a fixture or as personalty depends upon the objective intent of the [owner] to permanently incorporate [the] chattel into real property, as evidenced by the proven facts and surrounding circumstances entered into evidence.

*Lehmann v. Keller*, 684 A.2d 618, 621 (Pa. Super. 1996) (citations omitted).

Discussing fixtures, our Supreme Court has said:

> A fixture is by definition an improvement to real property. The general test used in determining when an article of personalty is a fixture has three components: (1) the relative permanence of attachment to realty; (2) the extent to which the chattel is necessary or essential to the use of the realty; and (3) the intention of the parties to make a permanent addition to the realty.

* * *

_____

[3] Again, Husband has not contested the plumbing repairs for which he had to reimburse Wife.

> The considerations in making such a determination may include: the degree to which and manner in which the object is attached to real property, the ease of removing the object, whether the object may be removed without damaging the real property, how long the object has been attached to the real property, whether the object is necessary or essential to the real property, and the conduct of the party and whether it evidences an intent to permanently attach the object to the reality.

***Noll by Noll v. Harrisburg Area YMCA***, 643 A.2d 81, 87-88 (Pa. 1994) (citations omitted). Further, "[a] fixture is an article in the nature of personal property which has been so annexed to the realty that it is regarded as part and parcel of the land." ***Smith v. Weaver***, 4 665 A.2d 1215, 1218 (Pa. Super. 1995).

At the various hearings, Wife and Husband provided testimony regarding those items that the trial court considered to be fixtures. Wife testified and provided photographs of the fire pit that was installed in 2006. Notes of Testimony ("N.T."), 4/8/2014, at 36. The fire pit was built upon a foundation that had been dug into the ground. *Id.* at 41. When Wife returned to the house, the fire pit had been dug up and removed. *Id.* at 46. Wife provided an estimate for the cost of rebuilding the fire pit from the landscaper who initially built it. *Id.* at 52. Husband admitted that he removed concrete benches and boulders from the fire pit to make a fire pit at his new house. N.T., 5/22/2014, at 20, 114.[4] Husband stated that his

_____

[4] Husband also admitted to taking numerous other items from the house that Wife believed should have been left, including: a pool umbrella, N.T., 5/22/2014, at 69; an outdoor dining table, *id.* at 71; outdoor chairs, *id.* at

*(Footnote Continued Next Page)*

daughter asked him to put in a fire pit at the new house, even though she had only used it at the old house once or twice. *Id.* at 20-21, 130-31.

Wife testified to the initial cost of the pond aerator. N.T., 4/8/2014, at 53-54. Wife testified that she replaced the aerator to get rid of the algae that had grown in the pond. N.T., 10/6/2014, at 73. Husband also admitted that he took the pond aerator. N.T., 5/22/2014, at 25. Husband did not use it at his new house, because the pond there was too shallow for the aerator. *Id.* at 115-16.

Given the testimony that the trial court found to be credible and the photographic evidence, it is clear that the fire pit was a fixture because it was annexed to the property. The pond aerator, while not affixed to the property, was "necessary or essential to the use of the realty" because it was required for the use and maintenance of the pond. *See Noll*, *supra*. Therefore, we find no abuse of discretion or error of law in the trial court's conclusion that Husband should reimburse Wife for the removal of these items.

*(Footnote Continued)* ─────────

74; two chaise lounges, *id.* at 74-75; an outdoor heater, *id.* at 75-77; two Adirondack chairs, *id.* at 78-79; three wrought-iron benches, *id.* at 79-80; a picnic table, *id.* at 80; a child's bench, *id.* at 83; a concrete bird bath, *id.* at 84; a decorative outdoor well pump and surrounding brick work; *id.* at 84, 86; and a bolted-in fireplace screen, *id.* at 87. Husband returned the fireplace screen to Wife between the first and second hearings. *Id.* at 87-88. These items are not disputed in this appeal.

Husband also challenges the repair costs for the HVAC, pool heater/chlorinator, and the central vacuum system.

Wife testified that the air conditioning did not work when she moved back into the house. N.T., 4/8/2014, at 112. Soon after, the heating system did not work either. *Id.* at 116. Wife testified that after getting estimates, she intended to replace the HVAC system. *Id.* at 131. Husband testified that both systems were working when he left the house. N.T., 5/22/2014, at 90.

Wife testified that the pool was working when she left the house. N.T., 4/8/2014, at 66. When she returned to the house, the heater and chlorinator were not working and the pool would not function without them being replaced. *Id.* at 66. Husband also took equipment that was needed for the pool. *Id.* at 68. Husband testified that the pool chlorinator worked while he was in the house, but that he did not open the pool the year that Wife moved in because he knew he was leaving. N.T., 5/22/2014, at 35, 37-38. Husband said that the heater also worked in the year prior to him leaving. *Id.* at 41. Husband denied the allegation that he took pool equipment. *Id.* at 46-48.

Wife testified that the central vacuum system worked when she left the house. N.T., 4/8/2014, at 77. When she returned, the system and motor did not run and the vacuum heads, hoses, and wall mounts were missing from the house. *Id.* at 77-78. Wife provided a receipt for the cost of repairing the system and replacing some of the equipment. *Id.* at 79.

Husband testified that the system worked when he left. N.T., 5/22/2014, at 52. Husband admitted that he took one hose, a set of vacuum heads, and some other equipment to use at his new house. *Id.* at 54-56.

Where, as here, the trial evidence amounts to a he-said/she-said situation, the trial court's credibility determination controls. The trial court found that Wife was credible. T.C.O. at 11. Although Husband testified that the items were working when he left, the trial court concluded that his testimony "suggested at the very minimum that he could not assert with complete assurance that those items were trouble-free and in working order when he left the residence. . . ." *Id.* at 12-13. Therefore, the trial court found that Husband had violated the provision of the PSA that required him to turn the house over to Wife in the same condition that it was in when Wife left. *Id.* at 11. The record supports these conclusions and we find no abuse of discretion.

Husband next contends that the trial court erred in awarding Wife counsel fees. He argues that, because he did not breach the PSA, no fees should have been awarded. Husband's Brief at 19.

The trial court awarded counsel fees pursuant to a provision in the PSA stating that, if the PSA were breached, the breaching party would be responsible for reasonable counsel fees. Order at 10. Finding that Husband had violated two provisions of the PSA, the trial court awarded counsel fees to Wife. *Id.* Because we have affirmed the trial court's findings with regard

to those provisions, we also conclude that the trial court did not err or abuse its discretion in awarding counsel fees pursuant to the PSA.

Finally, Husband contends that the trial judge was biased and that this Court should grant a new hearing with a new judge. Husband asserts that the trial judge demonstrated bias by noting that Husband had appeared before the court for forty-five hearings between December 13, 1991 and October 6, 2014. Husband argues that those hearings included hearings between Husband and his first wife, and have no relevance to the instant proceedings. Finally, Husband notes that he could not have sought recusal of the trial judge prior to this appeal because the reasons for recusal, *i.e.* trial court's comments, and therefore, the bias, were not revealed until the trial court issued its order. Husband's Brief at 15-17.

Our Supreme Court has held:

[A]s appellate tribunals, we are bound to resolve only those issues properly preserved for our review. In order to preserve an issue for appeal, a litigant must make a timely, specific objection at trial and must raise the issue on post-trial motions. Issues not preserved for appellate review cannot be considered by an appellate court even though the alleged error involves a basic or fundamental error. Additionally, in resolving those issues properly before us, we may only look to the record prepared in the trial court.

***Reilly by Reilly v. Se. Pennsylvania Transp. Auth.***, 489 A.2d 1291, 1296 (Pa. 1985) (footnote omitted).

The statement Husband now objects to is: "[The trial court has] had a total of 45 hearings involving [Husband] in Family Court between December

13, 1991 and October 6, 2014." Order at 2 n.3. That footnote was to this statement: "Paragraph 6(e) [of the PSA] has to be given a reasonable interpretation, especially in light of the history of this situation." *Id.* at 2. Husband alleged that he could not raise the issue of the judge's bias in the trial court because the judge did not reveal any bias, specifically the statement about the number of hearings Husband has been involved in, until the order was issued. However, at the October 6, 2014 hearing, the trial court judge said:

> And, by the way, my law clerk, before he left, for me did do a docket search and he found that I have had 45 hearings involving the Erbs. Now I'm not sure -- I'd have to look at his list, because it goes back to '91, whether he included for the 45 the ones for the first custody which would not involve, as a litigant, [Wife].

N.T., 10/6/2014, at 11. Husband made no objection or motion for recusal when the trial judge made this comment. A recusal motion must be decided by the trial court judge. *See Chadwick v. Caulfield*, 834 A.2d 562, 571 (Pa. Super. 2003) ("[The decision regarding whether a judge can decide a case fairly and impartially and without the appearance of impropriety] is a personal and unreviewable decision that only the jurist can make. Where a jurist rules that he or she can hear and dispose of a case fairly and without prejudice, that decision will not be overruled on appeal but for an abuse of discretion. In reviewing a denial of a disqualification motion, we recognize that our judges are honorable, fair and competent."). Husband has not

provided the trial court the opportunity to pass upon this motion and, therefore, he has not preserved this issue for our review.

The judge's comment, while relevant to demonstrate her familiarity with the case and the parties, was perhaps ill-advised. Nonetheless, a review of the record demonstrates that the parties received a fair and impartial hearing. ***See Reilly***, 489 A.2d at 1300 (stating that, when the denial of a recusal motion is appealed, "the record is before the appellate court which can determine whether a fair and impartial trial were had. *If so, the alleged disqualifying factors of the trial judge become moot.*" (emphasis in original)). Therefore, had the issue been preserved, it would not be meritorious.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/26/2015

- 13 -